# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3704

_____

S.M., et al.

*Plaintiffs - Appellees*

v.

Michael Krigbaum, Sheriff

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 23, 2015
Filed: December 9, 2015

_____

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

The Adult Drug Court, part of Missouri's 45th Judicial Circuit, is a post-plea program in which non-violent drug offenders' sentences provide treatment and rehabilitation and avoid felony convictions. In this 42 U.S.C. § 1983 action, five female Drug Court participants (collectively, "plaintiffs") seek damages for injuries resulting from sexual abuse by Scott Edwards, a Lieutenant in the Lincoln County

Sheriff's Department, while he acted as "tracker" for the Drug Court.[1]  Plaintiffs alleged that Edwards violated their substantive due process rights.  They also asserted claims against Lincoln County, its Sheriff, Michael Krigbaum, and Heather Graham-Thompson, an independent contractor who served as Drug Court Administrator, alleging that inadequate policies and their failure to supervise Edwards caused his due process violations.  Krigbaum and Graham-Thompson moved for summary judgment based on qualified immunity.  The district court granted Graham-Thompson qualified immunity and denied Krigbaum qualified immunity.  Krigbaum appeals.  Reviewing the denial of qualified immunity *de novo*, we reverse.

## I.  Background.

A Memorandum of Understanding ("MOU") established the Drug Court in August 2006.  The MOU was signed by two 45th Judicial Circuit Judges, who agreed to serve as presiding Drug Court Judges; the Prosecuting Attorneys and Sheriffs of Lincoln and Pike Counties; a probation and parole officer; a representative of the criminal defense bar; a substance abuse treatment provider; and the Administrator.  The MOU recited broad "core competencies" for each team member.  The county sheriffs agreed to provide "a monitoring function to the team (along with supervision and treatment): i.e., going on joint home visits, reporting on a participant's activities in the community, and supervising participation in community service."  The Drug Court Policies and Procedures Manual provided that "[t]he 45th Judicial Circuit will establish a standing team."  It identified team members as including a "Tracker" from the Lincoln County Sheriff's Department.  The tracker's role was:

> to conduct home visits and other participant contact in the community,
> as determined by the drug court team.  The duties of the tracker will be,
> but not limited to, conduct home visits, inspect participants' homes for

---

[1] Edwards pleaded guilty to federal charges that, while acting under color of law, he deprived plaintiffs of their rights.  See 18 U.S.C. § 242.

indications of drug and/or alcohol use, curfew compliance, conduct breathalyzer tests, on-site UA [urine analysis] tests and employment verification. If the tracker finds that the participant has violated drug court policy, he will contact the judge to determine if the participant should be taken into custody as a sanction. The Tracker will complete the "tracker reporting form" and return it to the case manager prior to weekly staffing and will provide input, as needed, on participant compliance at weekly staffing.

Krigbaum's predecessor as Lincoln County Sheriff signed the MOU and assigned Edwards to be the part-time Drug Court tracker. A full-time employee of the Sheriff's Department, Edwards was paid by Lincoln County. The Sheriff's Department budget received partial "reimbursement" from the Drug Court for Edwards's tracking activities. Edwards pleaded guilty to sexually assaulting plaintiffs between February 1, 2009, and November 30, 2010. The Drug Court team and Sheriff Krigbaum learned of the sexual assaults on December 1, when plaintiff S.M. gave an audiotape incriminating Edwards to her probation officer. Krigbaum immediately spoke to Edwards about the allegations and asked another police department to investigate. That evening, Krigbaum told Edwards he would be fired, then allowed Edwards to resign.

Krigbaum testified that Edwards was working as tracker when Krigbaum was elected Sheriff in 2008 and took office in January 2009. Krigbaum did not read the Drug Court Manual or the MOU, did not know how they described the tracker's duties, and did not evaluate Edwards's performance as tracker. Krigbaum believed Edwards reported to the Drug Court team and considered the Drug Court Judge or the Commissioner to be Edwards's supervisor when he was acting as tracker. Not surprisingly, government participants who signed the MOU all denied responsibility for supervising Edwards as tracker and denied knowledge of his unlawful actions. Circuit Judge James Sullivan, who served as Drug Court Commissioner, Drug Court Judge Bennett Burkemper, and Administrator Graham-Thompson identified Sheriff

Krigbaum as Edwards's supervisor. Edwards considered Administrator Graham-Thompson his supervisor.

The Sheriff is responsible for Sheriff's Department policies. One policy -- designed to protect both officers and suspects -- provided that "an officer who took someone of the opposite sex . . . into custody would report on the radio their mileage when they started and when they stopped." This policy was not applied to Edwards while working as tracker; he reported only when he started and ended tracker duty. There was evidence that other Drug Court team members had some concerns about Edwards before his sexual assaults were revealed. He took female participants who were temporarily in jail for non-compliance out for cigarette breaks, which was against jail policy. Graham-Thompson heard third-hand that Edwards had made "an uncomfortable remark" to plaintiff C.A., which Commissioner Sullivan addressed with Edwards. Just before Edwards's misconduct came to light, Sullivan learned that Edwards had moved plaintiff S.M. into a motel room and told Edwards this was inappropriate. There is no evidence Krigbaum was told about any of these incidents.

The district court denied Krigbaum qualified immunity because, while there was "no evidence . . . Krigbaum received notice of a pattern of unconstitutional acts," he did not impose the policy of radioing mileage when Edwards as tracker took a female participant into custody, and "there is a genuine issue whether any lack of notice is attributable to Krigbaum turning a blind eye to portentous indications such as Edwards taking drug court participants out of the jail to smoke cigarettes."

## II. Jurisdiction.

Qualified immunity shields a public official from damage liability unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those

who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). When a district court denies a defendant summary judgment based on qualified immunity, "the defendant may immediately appeal the 'purely legal' issue of 'whether the facts . . . support a claim of violation of clearly established law.'" Kahle v. Leonard, 477 F.3d 544, 549 (8th Cir.), cert. denied sub nom. Malone v. Kahle, 552 U.S. 826 (2007), quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985). But we do not have jurisdiction to review issues of "'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." Johnson v. Jones, 515 U.S. 304, 313 (1995).

Plaintiffs argue that we lack jurisdiction over this appeal because Krigbaum is challenging evidence sufficiency, not a "purely legal" issue. This contention is without merit. "Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and Johnson surely does not mean that *every* such denial of summary judgment is nonappealable." Behrens v. Pelletier, 516 U.S. 299, 312-13 (1996). In these cases, we have jurisdiction to decide, viewing the facts in the light most favorable to plaintiffs, whether a reasonable fact-finder could find a violation of plaintiffs' rights, whether the law establishing the violation was clearly established at the time in question, what was known to a person who might be shielded by qualified immunity, and the reasonableness of defendant's actions. See Kahle, 477 F.3d at 549-50; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014); Jones v. McNeese, 746 F.3d 887, 895 (8th Cir. 2014).

### III. The Merits.

Government officials are personally liable only for their own misconduct. Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010), citing Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997). Thus, "[t]he doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." Walton, 752 F.3d at 1125 (quotation omitted). When a supervising official who had no direct participation in

an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts. Livers v. Schenck, 700 F.3d 340, 355 (8th Cir. 2012).

(1) This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient. "To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." Id. at 356. For purposes of this appeal, Krigbaum concedes that Edwards's sexual assaults deprived plaintiffs of a clearly established constitutional right to substantive due process when he committed "an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective." Johnson v. Phillips, 664 F.3d 232, 239 (8th Cir. 2011) (quotation omitted). Sheriff Krigbaum is entitled to qualified immunity unless he had notice of a pattern of conduct that was sufficiently egregious in nature. Qualified immunity from supervisory liability turns on what Sheriff Krigbaum knew of Edwards's actions as tracker, not what Drug Court Administrator Graham-Thompson or Commissioner Sullivan knew.

The district court found that "[t]here is no evidence . . . Krigbaum received notice of a pattern of unconstitutional acts," and that "Krigbaum did not know of any misconduct . . . nor had he heard any rumors about Edwards paying particular attention to women." These findings establish that plaintiffs did not meet their burden to prove Krigbaum received notice of a pattern of unconstitutional acts; therefore, Krigbaum is entitled to qualified immunity as a matter of law. See Livers, 700 F.3d at 357. The district court reasoned that Krigbaum's "lack of notice" could be "attributable to Krigbaum turning a blind eye to portentous indications such as Edwards taking drug court participants out of the jail to smoke cigarettes." Assuming

without deciding that "turning a blind eye" could ever constitute actual notice, and that Krigbaum knew of this conduct, being aware that Edwards violated jail policy by taking Drug Court participants out for a cigarette break falls far short of notice of a pattern of conduct that violated plaintiffs' rights to substantive due process.[2]  Like the defendant sheriff in <u>Walton</u>, Krigbaum acted to fire Edwards as soon as Krigbaum learned of Edwards's egregious misconduct.

(2) In addition to notice of a pattern of unconstitutional conduct, plaintiffs must present sufficient evidence that Krigbaum acted with deliberate indifference to their rights.  When the issue is qualified immunity from individual liability for failure to train or supervise, deliberate indifference is a subjective standard that "entails a level of culpability equal to the criminal law definition of recklessness."  <u>B.A.B., Jr. v. Bd. of Educ. of St. Louis</u>, 698 F.3d 1037, 1040 (8th Cir. 2012); <u>see</u> <u>Liebe v. Norton</u>, 157 F.3d 574, 579 (8th Cir. 1998).  "[Plaintiffs] must prove [Krigbaum] *personally knew* of the constitutional risk posed by [his] inadequate training or supervision" of Edwards.  <u>Walton</u>, 752 F.3d at 1118.  To be deliberately indifferent, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of [unconstitutional] harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).[3]

In their Memorandum in Opposition to the district court, plaintiffs noted our recent decision in <u>Walton</u> confirming this subjective standard and stated:

---

[2] The district court also noted a 2012 incident in which Krigbaum hugged and kissed his female deputy.  This conduct occurred two years *after* Edwards's firing and did not involve similar misconduct.

[3] The Supreme Court applied an objective standard of deliberate indifference to a failure-to-supervise claim against a municipality in <u>Canton v. Harris</u>, 489 U.S. 378, 390 (1989).  We noted this distinction in <u>Walton</u>, 752 F.3d at 1117-18, and the Supreme Court carefully explained it in <u>Farmer</u>, 511 U.S. at 840-42.

Plaintiffs acknowledge that Sheriff Krigbaum had no actual knowledge of these facts or any other facts that a supervisor would actually know from engaging in even a modicum of actual supervision, so if the test is a subjective one, he presumably escapes liability.

The district court erred when it ignored both this fatal admission and our decision in Walton and denied Krigbaum qualified immunity. Likewise, the district court erred in ruling that "[r]egardless whether *Krigbaum* was deliberately indifferent, it is disputed whether the *Sheriff of Lincoln County* was." Krigbaum is personally liable only for his own misconduct.

The Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising Edwards on a day-to-day basis when he served as tracker. In denying summary judgment, the district court declared that Krigbaum's "ability and duty to supervise Edwards" is a genuine issue of material fact. On appeal, citing no supporting authority, plaintiffs assert that "[f]ailing to supervise when one has a duty to supervise is to be deliberately indifferent." We reject this contention. Krigbaum could not be *deliberately* indifferent in failing to satisfy a duty he did not know he had. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); see Daniels v. Williams, 474 U.S. 327, 329-30 (1986). The claim that Sheriff Krigbaum unreasonably failed to exercise a duty to supervise Edwards to prevent him from harming plaintiffs "is a claim of negligence that cannot be the basis of a constitutional tort claim." Moore v. Briggs, 381 F.3d 771, 774 (8th Cir. 2004) (quotation omitted).

Plaintiffs place great emphasis on a statement in Kahle that "[a] supervisor can act with deliberate, reckless indifference even when he does not act knowingly." 477 F.3d at 551-52 (quotation omitted). But that statement simply clarified that a supervisor can be held liable if he knows of a substantial risk of harm, even if he was

not "subjectively aware of the actual harm that the plaintiff experienced." 477 F.3d at 551. In <u>Kahle</u>, the jail supervisor knew that a male trainee was breaking the rules by going in and out of a female inmate's cell after lockdown and ignored the obvious risk of sexual assault. 477 F.3d at 552. Krigbaum had no information that would have raised an inference that Edwards was violating his training and duties as a police officer by sexually assaulting the Drug Court participants he monitored.

Plaintiffs also rely on our statement that to be liable "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, *or turn a blind eye for fear of what [he] might see*." <u>Ottman v. City of Independence</u>, 341 F.3d 751, 761 (8th Cir. 2003) (emphasis added), quoting <u>Ripson v. Alles</u>, 21 F.3d 805, 809 (8th Cir. 1994). The statement preceded the Supreme Court's decision in <u>Farmer</u> and therefore must be ignored to the extent it is inconsistent with the subjective test for deliberate indifference. Here, plaintiffs presented no evidence that Krigbaum had knowledge of sexual misconduct by Edwards that would create an inference Krigbaum turned a blind eye to or consciously disregarded a substantial risk of the constitutional harm Edwards was causing -- conscience-shocking violations of plaintiffs' substantive due process rights by a member of the Sheriff's Department performing duties for the Drug Court. <u>See</u> <u>Kahle</u>, 477 F.3d at 551.

(3) Finally, plaintiffs argue that Sheriff Krigbaum should be denied qualified immunity from their claims of inadequate policy based on Krigbaum's failure to enforce the policy requiring Sheriff's Department deputies to call in mileage when transporting persons of the opposite sex. A supervisor may be liable if he "is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." <u>Jackson v. Nixon</u>, 747 F.3d 537, 543 (8th Cir. 2014) (quotation omitted). The policy in question was designed to protect persons; it did not "give rise to unconstitutional conditions."

The Order of the District Court denying Sheriff Krigbaum qualified immunity is reversed.  We deny plaintiffs' Motion for Prompt Dismissal of Appeal.

_____