# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3451

_____

S.M. et al.

*Plaintiffs - Appellees*

v.

Lincoln County, Missouri

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 7, 2017
Filed: October 27, 2017

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Plaintiffs S.M., L.M., K.W., and K.S. are former participants in the Adult Drug Court of Missouri's 45th Judicial Circuit ("Drug Court"), an alternative court established to dispose of drug cases pursuant to Mo. Rev. Stat. §§ 478.001-.006. Plaintiffs brought this 42 U.S.C. § 1983 damage action against Lincoln County and other defendants, asserting that Scott Edwards, then a lieutenant in the Lincoln

County Sheriff's Department, violated their substantive due process rights by committing repeated acts of sexual abuse while serving in his position as the "tracker" (monitor) of Drug Court participants.

In a prior appeal, we reversed the denial of qualified immunity to individual defendant Michael Krigbaum, who served as Sheriff of Lincoln County at the time of Edwards's criminal misconduct.[1] S.M. v. Krigbaum, 808 F.3d 335 (8th Cir. 2015). On remand, the claims against Lincoln County proceeded to a three-day trial. The jury found that the Lincoln County Sheriff, a County policy maker, was deliberately indifferent to plaintiffs' constitutional rights in failing to supervise tracker Edwards. The jury awarded compensatory damages of $750,000 to S.M. and $500,000 each to K.W., K.S., and L.M. The district court[2] denied Lincoln County's renewed motion for judgment as a matter of law or in the alternative for a new trial. Lincoln County appeals the denial of its post-verdict motion.[3] Applying the deferential standards for review of a jury verdict and the denial of a motion for new trial, we affirm.

**I.**

It is undisputed that Edwards "deprived plaintiffs of a clearly established constitutional right to substantive due process when he committed an egregious,

---

[1]Edwards pleaded guilty to exploiting his tracker position to gain the trust of Drug Court participants S.M., L.M., K.W., and K.S. and then coercing their submission to sexual assaults. Edwards is serving a ten-year prison sentence.

[2]The Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri.

[3]Lincoln County also appeals the district court's denial of its pretrial motions for summary judgment. Following trial on the merits, we do not consider interlocutory rulings concerning sufficiency of the evidence. See N.Y. Marine & General Ins. Co. v. Cont'l Cement Co., 761 F.3d 830, 838 (8th Cir. 2014).

nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective." Krigbaum, 808 F.3d at 340 (quotation omitted). Edwards's tracker duties included curfew checks at participants' homes at 10 p.m.; searches of their homes, refrigerators, and trash for evidence of drug use or other Drug Court program noncompliance; conducting on-site urine analysis tests; reporting information about participants' compliance at Drug Court team meetings; and taking participants who violated program requirements into custody. The Drug Court circuit judge issued sanctions and punishments, including jail time, for program noncompliance.

Some of Edwards's sexual assaults occurred while plaintiffs were incarcerated as a Drug Court sanction in a Sheriff's Department jail. Assaults also occurred when Edwards visited the plaintiffs' homes in the evenings for curfew checks, or while conducting strip searches, or while transporting participants in his patrol car. On several occasions, Edwards required plaintiffs to remove their bras and expose their breasts to "shake out" evidence of drug use. On another occasion, Edwards fondled and abused a participant while feigning to look for evidence of drug use. Edwards assaulted S.M. after moving her to a motel room. Plaintiffs did not report the assaults because they believed Edwards held power over them at the Drug Court. He would cover up a victim's Drug Court violations, so she felt "he had something solid on me that he could use against me to actively do whatever it was he was going to do." After learning that L.M. had relapsed, Edwards told her she could "earn it back" (avoid sanction) through sexual favors.

At issue is Lincoln County's liability for these egregious violations. The jury found that Lincoln County was deliberately indifferent to an obvious risk that the County's failure to supervise Edwards would result in these violations of plaintiffs' rights. Lincoln County argues that plaintiffs presented legally insufficient evidence to support this finding, which is a prerequisite to imposing § 1983 municipal liability.

-3-

We must uphold the verdict unless it has no legally sufficient evidentiary basis. Jackson v. City of St. Louis, 220 F.3d 894, 896 (8th Cir. 2000).

**A.** A municipality (or County) "may not be found liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Szabla v. City of Brooklyn Park, MN., 486 F.3d 385, 389 (8th Cir. 2007) (en banc), quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). It "cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor" such as Edwards. Id. Where municipal action "*itself* violates federal law, or directs an employee to do so, resolving [] issues of fault and causation is straightforward." Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404-05 (1997). But where the claim is that municipal action lawful on its face caused an employee to inflict constitutional injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405. In City of Canton v. Harris, 489 U.S. 378, 388 (1989), the Court held that municipal liability for a claim such as failure to supervise employee Edwards -- plaintiffs' theory in this case -- requires proof that the failure "amounts to deliberate indifference to the rights of persons with whom the [employee] come[s] into contact." Municipal inaction must be the "moving force [behind] the constitutional violation." Id. at 389 (alteration in original) (quotation omitted); see Szabla, 486 F.3d at 390-91.

Deliberate indifference in this context "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410. The issue is whether, "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390, quoted in Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998); cf. Cash v. Cty. of Erie, 654 F.3d 324, 337 (2d Cir. 2011) (failure-to-supervise claim), cert. denied, 565 U.S. 1259 (2012).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quotation omitted). "In resolving the issue of a city's liability, the focus must be on adequacy of the [supervision] in relation to the tasks the particular officers must perform." Canton, 489 U.S. at 390.

"When the issue is qualified immunity from individual liability for failure to train or supervise, deliberate indifference is a subjective standard" that requires personal knowledge of the constitutional risk posed by inadequate supervision, the basis for our conclusion that Sheriff Krigbaum was entitled to qualified immunity in Krigbaum, 808 F.3d at 341. But an objective standard of deliberate indifference applies to plaintiffs' failure-to-supervise claims against the County. Id. at n.3; see Farmer v. Brennan, 511 U.S. 825, 840-42 (1994); Canton, 489 U.S. at 390.

**B.** A unique aspect in applying these established municipal-liability principles to this case is the central role played by the multi-agency Drug Court. Though generally authorized by state statute, the Drug Court was established by a lengthy August 2006 Memorandum of Understanding ("MOU") between the Forty-Fifth Circuit Court, "the local Defense Bar, The Sheriffs of Lincoln and Pike Counties, Department of Corrections District Office of Probation and Parole, and designated substance abuse treatment providers." Sheriff Krigbaum's predecessor signed the MOU as Lincoln County Sheriff, thereby undertaking to be a "team member" and "to enhance interagency communication to provide an effective treatment team for the Drug Court participants" through this "linkage of services." In a section of the MOU entitled "**SHERIFFS**," the Lincoln County Sheriff agreed to a list of eight "core competencies," including:

> 1. Participates fully as a Drug Court team member, committing him or herself to the program mission and goals, and works as full partner to insure their success.

-5-

7. Provides a monitoring function to the team (along with supervision and treatment): i.e. going on joint home visits, reporting on a participant's activities in the community, and supervising participation in community service.

The Drug Court Policies and Procedures Manual states that the Lincoln County Sheriff's Department provides the monitoring tracker. The Manual explains:

The role of the tracker is to conduct home visits and other participant contact . . . . The duties of tracker will be, but not limited to, conduct home visits, inspect participants' homes for indications of drug and/or alcohol use, curfew compliance, conduct breathalyzer tests, on-site UA [urine analysis] tests and employment verification. If the tracker finds that the participant has violated drug court policy, he will contact the judge to determine if the participant should be taken into custody as a sanction.

In Krigbaum, we noted that "[t]he Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising Edwards on a day-to-day basis when he served as tracker." 808 F.3d at 341. The evidence at trial bore this out. Two Circuit Court judges assigned to the Drug Court, the Drug Court Administrator, and Drug Court team members from the Lincoln County Circuit Clerk, the Drug Court's counseling service, and Probation and Parole testified that they did not supervise Edwards, believing the Sheriff's Department was his supervisor. Judge Burkemper testified: "If we had issues with any of the team members, we would try to talk to them first. And if that wasn't successful, we went to . . . his or her boss. . . . I've never seen the Drug Court team as having any supervisory authority over . . . any team members." Edwards testified by deposition that he worked alone and considered the Drug Court Administrator to be his supervisor.

When Krigbaum was elected Lincoln County Sheriff in 2008, the Drug Court was operating with Edwards serving as tracker. The tracker position was "secondary" to Edwards's regular Sheriff's Department duties; his tracker pay came from a separate County fund. Circuit Judge Burkemper contacted Krigbaum regarding the Drug Court and advised him of the MOU. Krigbaum said he would support the Drug Court by continuing to provide a tracker and his vehicle and to pay his salary. Krigbaum retained Edwards in the tracker position but thereafter paid no attention to the Drug Court. He did not attend team meetings with Edwards. He did not monitor or inquire about Edwards's performance as tracker. Edwards submitted time sheets for hours spent working as tracker; Krigbaum approved the time sheets without attempting to verify the information, which Edwards under-reported. The Sheriff's Department policy requiring officers to call in their location and mileage when transporting a juvenile or member of the opposite sex was not applied to Edwards when serving as tracker. Krigbaum discussed the Drug Court with County Commissioners only "when it came to money." He first saw the Drug Court MOU and Policies and Procedures Manual at his deposition in this lawsuit.

**C.** Lincoln County argues the evidence was insufficient to show that the County is liable for failing to supervise Edwards while he worked as Drug Court tracker because Sheriff Krigbaum thought the Drug Court supervised Edwards when serving as tracker, Krigbaum lacked actual knowledge of Edwards's misconduct, and no testimony connected the Sheriff's Department to knowledge of Edwards's misdeeds. But this argument fails to take into account the failure-to-supervise instructions submitted to the jury *without objection*. For each plaintiff, the jury was instructed that its verdict will be against Lincoln County if it finds:

> *First*: The Lincoln County Sheriff, as policy maker for Defendant Lincoln County, was responsible for supervising Scott Edwards as Drug Court Tracker; and

*Second*: Defendant Lincoln County's supervision of Scott Edwards as Drug Court Tracker was inadequate; and

*Third*: The need for supervision by Defendant Lincoln County was so obvious, and the inadequacy so likely to result in the violation of [each Plaintiff's] constitutional rights, that the policy maker for Defendant Lincoln County can reasonably be said to have been "deliberately indifferent" to the need for such supervision; and

*Fourth*: The failure of Defendant Lincoln County to supervise Scott Edwards as Drug Court Tracker was the cause of the injuries to [each Plaintiff].

Two aspects of this instruction are of critical importance to this appeal. In the *first* instruction, the person identified as Lincoln County policy maker was not Sheriff Michael Krigbaum; it was "The Lincoln County Sheriff." Thus, in determining supervisory responsibilities, the jury was instructed that it could consider, as plaintiffs argued, that "the Sheriff" signed an MOU agreeing to be a fully participating Drug Court team member, whether or not Krigbaum ever understood the Sheriff's Drug Court responsibilities or even read the MOU. The *Third* instruction, which exactly tracked the above-quoted liability standard from Canton as quoted by this court in Liebe, permitted the jury to find that the need for supervision was "so obvious" because of danger signals that were apparent to other Drug Court team members but were never conveyed to Sheriff Krigbaum, who ignored Drug Court activities altogether. In a "no supervision" case involving a municipal-liability claim against one agency participant, a novel and potentially critical legal issue is whether a need for supervision that became obvious to other agencies' officials can establish the deliberate indifference of a Lincoln County Sheriff who was unaware of the danger signals. However, as Lincoln County failed to object to the district court's verdict director, the only issue before us is whether the trial evidence permitted a reasonable jury to find for the plaintiffs on the elements of the claim as instructed.

**D.**  Turning to the specific sufficiency issues, the County's principal defense at trial was that Sheriff Krigbaum was not responsible for supervising Edwards as Drug Court tracker.  But the trial evidence was clearly sufficient to permit a reasonable jury to find, as they were instructed, that *the Lincoln County Sheriff*, as a Lincoln County policy maker, was responsible for supervising Scott Edwards as Drug Court Tracker.  The terms of the MOU, standing alone, support this finding.  And the testimony of Judge Burkemper that the Drug Court considered the agency providing a particular team member to be that person's "supervisor" gave the jury a common-sense basis for resolving an issue that, in hindsight, was left unresolved when the Drug Court was established, with disastrous results.

One of the two critical fact issues at trial was whether the need to supervise Edwards as tracker was, in the words of the jury instruction, "so obvious . . . that the policy maker for Defendant Lincoln County can reasonably be said to have been 'deliberately indifferent' to the need for such supervision."  Though this instruction followed the language of the deliberate indifference test articulated in Canton, it arguably did not give the jury an accurate sense of how rigorously the standard must be applied "to ensure that the municipality is not held liable solely for the actions of its employee."  Brown, 520 U.S. at 405.  But as there was no objection to the instruction, that issue is not before us and we do not consider it.

At trial, plaintiffs contended that specific evidence demonstrated a pattern of activity by tracker Edwards that made obvious the inadequacy of his supervision "in relation to the tasks the particular officer[] must perform."  Canton, 489 U.S. at 390.  Some of the evidence related to misconduct by Edwards that should have been obvious to Sheriff Krigbaum and the Sheriff's Department jail staff.  Edwards visited K.W., S.M., and L.M. while incarcerated and took them out of jail for smoke breaks or to a McDonald's.  These were clear violations of jail policies, and Edwards and plaintiffs walked past jail staff as they exited the prison.  S.M. testified that Edwards used these occasions to initiate sexual contact "in the detective side [of the facility]

where it would be dark . . . . [T]hat's where he would grope or touch or do whatever it was he wanted to do with us." More generally, Krigbaum testified that there is a risk of misconduct when law enforcement officers are alone with females, and Edwards told Krigbaum that he had the authority to report facts as tracker that could make a participant go to jail.

Much of plaintiffs' "so obvious" evidence concerned Edwards's conduct as tracker that was known to Drug Court team members but not to Sheriff Krigbaum because he ignored the Sheriff's role as defined in the Drug Court MOU. For example, despite the MOU's explicit reference to "joint" visits, Edwards worked alone "almost exclusively" when performing tracker duties, including night visits to female participants' homes, and Judge Burkemper testified he'd "never known two people to go out." There was also evidence that Edwards made derisive sexual comments at Drug Court team meetings about females under his supervision, under-reported hours and trips in his patrol car to the plaintiffs' homes, and was widely perceived as devoting attention to younger women. A male Drug Court participant testified that it was common knowledge that Edwards spent a disproportionate amount of time supervising female participants who were "attractive, young, and new to the Drug Court program and kind of naive."

Viewed in toto, we conclude that this evidence, while not overwhelming, was sufficient to permit a reasonable jury to find that (i) it was so obvious to Drug Court team members that failing to provide *any* supervision of Edwards as Drug Court tracker would result in the violation of sexually vulnerable participants' constitutional rights as to constitute deliberate indifference to the need for supervision, and (ii) this deliberate indifference was attributable to the Sheriff of Lincoln County as the Drug Court team member responsible for supervising tracker Edwards.

Lincoln County further argues the evidence was insufficient to prove the other essential element of municipal liability -- that a lack of supervision was the "moving

force" behind Edwards's constitutional violations. See Parrish v. Ball, 594 F.3d 993, 1000 (8th Cir. 2010) (quotation omitted). As Sheriff Krigbaum acknowledged, there is always a risk of sexual assaults when male police officers exercise official authority over females. Edwards's extensive authority and responsibilities to monitor Drug Court participants provided an ideal environment for an officer to coerce sexually vulnerable females into unwanted sexual contact, and the danger signals Edwards's conduct provided to jail staff and Drug Court team members made that specific risk obvious. Compare Harris v. City of Pagedale, 821 F.2d 499, 508 (8th Cir. 1987), with Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996). Though plaintiffs failed to identify specific supervisory procedures that should have been instituted, the jury could reasonably infer that even a modest level of active supervision would have successfully deterred Edwards's repeated misuse of his authority for the purpose of sexual abuse. This is not an "isolated incident" case, even though Edwards was the only Drug Court tracker. Szabla, 486 F.3d at 393 (quotation omitted). Viewing the trial evidence as a whole, as we must, a reasonable jury could find that the County's inadequate supervision was the moving force that enabled Edwards to sexually assault the plaintiffs.

## II.

Lincoln County argues the district court abused its discretion in denying the County's motion for a new trial because the jury awarded substantial compensatory damages but "no evidence of a financial nature or detailed testimony about the basis for any such damage award was presented at trial."

"A compensatory damage award for emotional distress may be based on a plaintiff's own testimony. Such an award must be supported by competent evidence of genuine injury, but medical or other expert evidence is not required." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 552 (8th Cir. 2013) (quotation omitted), citing Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997). Here, plaintiffs

-11-

testified at length about the sexual acts they endured and the impact Edwards's actions as tracker had on them, including interfering with their ability to overcome drug addictions. The evidence included Edwards's plea agreement, in which he admits to acts of aggravated sexual abuse, as well as an audio recording of Edwards's assault of S.M. in a motel room. "A motion for new trial based on sufficiency of the evidence should be granted only if the verdict is against the weight of the evidence." Bennett, 721 F.3d at 552-53 (quotation omitted). As in Bennett, the district court did not clearly abuse its discretion in denying a new trial based on the jury's damage awards.

The judgment of the district court is affirmed.

_____