# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-1685

_____

Stephanie Sturgeon; Whitney Tracey, originally named as Whitney Tracy;
Christina Duncan; Leslie Lawson Thomas

*Plaintiff*s

Dana Harrison; James O'Hara; Shane Willard

*Plaintiffs - Appellees*

Brad Caubble

*Plaintiff*

Christa Hess

*Plaintiff - Appellee*

Jessica Lemons

*Plaintiff*

Alvin Miller

*Plaintiff - Appellee*

v.

Brodie Faughn; Brittany Eskridge, originally named as Brittany Dickerson; Robert
Stacy, Mayor of the City of Wynne, Arkansas; Jeff Sanders, Chief of Police of the

City of Wynne, Arkansas; Billy Fowler, City Council Member; Charles Hamrick, City Council Member

*Defendants - Appellants*

Herbert Todd, City Council Member

*Defendant*

Glen Hirons, City Council Member; Buck Morris, City Council Member; Donald Jones, City Council Member

*Defendants - Appellants*

Freddie Smith, City Council Member

*Defendant*

Kenneth Lofton, City Council Member; Mike Hamrick, City Council Member; Jason Nichols, City Council Member; City of Wynne

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: January 13, 2022
Filed: June 10, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

James O'Hara and Christa Hess, among others, filed suit against Wynne, Arkansas, patrolman Brodie Faughn in his individual capacity. The plaintiffs pleaded claims under 42 U.S.C. § 1983, alleging that Faughn had violated their constitutional right to be free from unreasonable searches and seizures. The plaintiffs also sued the Wynne police chief, Jeff Sanders, and the mayor, Robert Stacy, in their individual capacities, for failing to supervise Faughn.

The defendants moved for summary judgment based on qualified immunity. The district court[1] denied the motion, in relevant part. We reverse.

## I. Background

O'Hara worked as a police officer in Cherry Valley, Arkansas. He was driving home at approximately 1:25 a.m. on June 2, 2017, when Faughn initiated a traffic stop. Faughn acknowledged that O'Hara was a police officer and thereafter went to his patrol car to search O'Hara's name in a law enforcement database. Faughn returned and instructed O'Hara to fix his license plate tag lights, but did not issue a citation and drove away. Immediately thereafter, O'Hara exited his vehicle and photographed his license plate. The photograph shows that although both of the tag lights were working, they failed to illuminate O'Hara's license plate.

Faughn later contacted O'Hara's supervisor, reporting that O'Hara had been confrontational and that he appeared to be under the influence of substances during the stop. In light of this report, the supervisor asked O'Hara to submit to a drug test. O'Hara refused to do so and was terminated.

---

[1]The case was referred by consent of the parties for final disposition by a United States Magistrate Judge for the Eastern District of Arkansas. See 28 U.S.C. § 636(c).

Hess first encountered Faughn when he arrived at her workplace to deliver papers to her employer. According to another person present, Faughn could not "peel[] his eyeballs off of" Hess. Faughn initiated a chat with Hess on social media a few days later, saying that she was "looking good" when he stopped by her office. According to Hess, Faughn thereafter began parking near her home and following her into stores and gas stations.

Hess saw Faughn on August 3, 2018, as she was picking up pizza to bring to a party for her son later that afternoon. Faughn followed her out of the restaurant. Wynne officer Aaron Mears stopped Hess's vehicle sometime thereafter, allegedly because her brake lights were out. Hess had had her brake lights fixed the day before, however, after receiving a warning to have them repaired. As Hess looked for her license and registration, Mears saw several prescription medication bottles in her purse and decided to investigate whether she was intoxicated. According to Mears, Hess showed signs of intoxication and he pointed a beam of light at her eyes to determine if they would dilate properly.

Mears then called Faughn, who holds advanced certification in roadside impairment testing and who arrived at the scene approximately twelve minutes into the stop. Mears and Faughn each performed several field-sobriety tests on Hess. The two officers discussed the result of the tests: Mears stated that Hess's "eyes were all over the place," and that while her performance was "fairly decent," she still showed indicators of intoxication. Faughn had little to say about Hess's performance. Mears decided to place Hess under arrest for suspicion of driving while intoxicated by drugs. She was charged with driving under the influence of drugs and possessing improper lights, but was found not guilty of both offenses.

The Wynne Police Department had received at least ten complaints against Faughn between September 21, 2016, and January 15, 2018. Officers reviewed the body camera footage from every complaint to determine whether the recordings

supported the allegations and interviewed witnesses when footage was unavailable. The reviewing officer verbally reported the results of their investigations to Chief Sanders, including him in the review process when necessary. According to Sanders, the complaints against Faughn were determined to be unfounded, although there is no documentation of this process or determination.

As relevant here, eleven plaintiffs filed an amended complaint against Faughn, Stacy, Sanders, other members of the Wynne Police Department and City Council, and the City of Wynne. Following various voluntary dismissals of claims and parties, Faughn, Stacy, and Sanders, along with other defendants not party to the appeal, filed a motion for summary judgment on the basis of qualified immunity as to the claims of six of the plaintiffs. The district court granted qualified immunity to the defendants as to the claims of one plaintiff and denied it as to the remaining five plaintiffs' claims. The defendants appeal the denial of summary judgment as to O'Hara's and Hess's claims against Faughn, and as to all remaining plaintiffs' claims against Stacy and Sanders.

## II. Discussion

The defendants are entitled to qualified immunity unless their actions violated a constitutional right that was clearly established at the time of the alleged violation. See Atkinson v. City of Mountain View, 709 F.3d 1201, 1211 (8th Cir. 2013). We review the district court's denial of summary judgment *de novo*. See id. at 1207. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" Atkinson, 709 F.3d at 1207 (quoting Dahl v. Rice Cnty., 621 F.3d 740, 743 (8th Cir. 2010)).

## A. Claims against Faughn

O'Hara alleges that Faughn violated his constitutional rights by stopping him without reasonable suspicion that O'Hara had committed a crime, intending instead only to hassle and harass him because he was a Cherry Valley police officer. See Garcia v. City of New Hope, 984 F.3d 655, 663 (8th Cir. 2021) ("Because a traffic stop is a seizure under the Fourth Amendment, it 'must be supported by reasonable suspicion or probable cause.'" (quoting United States v. Hollins, 685 F.3d 703, 705–06 (8th Cir. 2012)). "Reasonable suspicion is a lower threshold than probable cause," requiring "at least some minimal level of objective justification"—something more than unparticularized suspicion or a hunch—for the belief that a suspect has committed a crime. Waters v. Madson, 921 F.3d 725, 736 (8th Cir. 2019) (internal citations and quotation marks omitted) (cleaned up). An officer is entitled to qualified immunity if "a reasonable officer in the same position could have believed she had reasonable suspicion." Id.

Faughn asserts that he had reasonable suspicion to stop O'Hara because O'Hara's tag lights did not properly illuminate his license plate, as required by Arkansas law. See Ark. Code Ann. § 27-36-215(c)(1)(A) ("Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible for a distance of fifty feet (50') to the rear."). O'Hara submitted only the photograph of his license plate and tag lights as evidence to support his claim that Faughn lacked reasonable suspicion for the stop. The photograph shows that the tag lights were functioning, but dim, and it further shows that the license plate numbers were obscured by darkness. Without any testimony, photographs, or other evidence to show that his rear registration plate was visible on that night, there is no genuine dispute of material fact that Faughn had

reasonable suspicion to stop O'Hara for a traffic infraction. Faughn is thus entitled to qualified immunity on O'Hara's claim.[2]

Hess argues that Faughn violated her constitutional rights by conspiring with Officer Mears to stop and arrest her without probable cause as a pretext to continue a pattern of harassment against her. "Government officials are personally liable only for their own misconduct." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015). To determine whether Faughn is liable for any alleged constitutional violation, we must thus perform "an *individualized* analysis" of his conduct as it relates to the stop. See id. (quoting Walton v. Dawson, 752 F.3d 1109, 1125 (8th Cir. 2014)).

Hess has not set forth evidence showing Faughn to be responsible for the alleged Fourth Amendment violations that occurred when Mears stopped her in August 2018. Hess saw Faughn at a restaurant at some point before the stop. But there is no evidence in the record that Faughn asked Mears to initiate the stop or that Mears and Faughn communicated with one another before Mears pulled Hess's vehicle over. Faughn's twelve-minute-later involvement in the stop resulted from his response to Mears's call for assistance in performing additional field sobriety test on Hess. Further, it is clear from the body camera footage that Mears, not Faughn, made the decision to place Hess under arrest. Hess's allegations about Faughn's inappropriate behavior towards her on other occasions do not support her claim that Faughn, rather than Mears, caused her to be stopped or arrested in August 2018. We

---

[2] O'Hara's complaint seems to raise a separate claim that Faughn deprived him of the wages from his Cherry Valley police job without due process by calling O'Hara's supervisor, who later terminated him. O'Hara did not meaningfully pursue this claim in the district court or on appeal, however, and so we do not consider it.

thus reverse the district court's denial of summary judgment to Faughn based on Hess's claims.[3]

B. Claims against Sanders and Stacy

The plaintiffs allege that Chief Sanders and Mayor Stacy are liable for Faughn's alleged unconstitutional acts because they had received notice of his behavior and failed to stop it. A supervising officer may be liable for the actions of his subordinates when "he (1) had 'notice of a pattern of unconstitutional acts committed by subordinates'; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to" the plaintiffs. Livers v. Schenck, 700 F.3d 340, 355 (8th Cir. 2012) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Assuming that Sanders and Stacy knew of the complaints against Faughn, we nonetheless conclude that the plaintiffs have failed to present evidence that either official was deliberately indifferent to them. "[D]eliberate indifference is a subjective standard that 'entails a level of culpability equal to the criminal law definition of recklessness.'" S.M., 808 F.3d at 341 (quoting B.A.B., Jr. v. Bd. of Educ. of St. Louis, 698 F.3d 1037, 1040 (8th Cir. 2012)). The failure to train or supervise the officer must "reflect[] a deliberate or conscious choice." B.A.B., Jr., 698 F.3d at 1040 (internal quotation marks and citation omitted). "To be deliberately indifferent, an 'official must both be aware of facts from which the inference could be drawn that a substantial risk of [unconstitutional] harm exists, and he must also draw the inference.'" S.M., 808 F.3d at 341 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (alteration in original).

---

[3]Hess submitted an affidavit stating that Faughn had patted her on the buttocks during the stop. The complaint did not include this allegation, however, nor did Hess plead any claim based on unconstitutional sexual contact.

Sanders understood that a subordinate officer investigated all complaints by watching body camera footage or by interviewing witnesses if footage was unavailable. He received verbal reports of the investigations, and disciplinary action was taken when the complaint was supported by the footage or interviews. He believed, based on the investigations, that the complaints against Faughn were unfounded. There is no evidence in the record that would show that Sanders subjectively believed that Faughn nonetheless posed a substantial risk of unconstitutional harm to others. Similarly, no evidence suggests that Mayor Stacy deliberately disregarded a risk posed by Faughn. He viewed body camera footage relating to at least one complaint against Faughn, but he otherwise referred complaints to Sanders rather than investigating them himself. Because no evidence in the record supports a finding that either Sanders or Stacy subjectively knew of and deliberately disregarded a substantial risk of unconstitutional harms posed by Faughn, we reverse the district court's denial of summary judgment to them.[4]

We reverse the district court's order denying qualified immunity as to O'Hara's and Hess's claims against Faughn and as to all plaintiffs' claims against Sanders and Stacy. We remand for entry of summary judgment in favor of Faughn, Sanders, and Stacy on these claims and for further proceedings not inconsistent with this opinion.

_____

[4]While the plaintiffs' briefing and complaint alleges that the police department's policies and customs were insufficient to protect against constitutional violations, no official capacity claims are before us. See Monell v. Dep't of Soc. Srvs., 436 U.S. 658, 694 (1978).