KELLY, Circuit Judge.
Randall Jackson appeals the dismissal with prejudice of his lawsuit brought pursuant to 42 U.S.C. § 1983 against various state officials involved in administering and supervising the Western Reception, Diagnostic, and Correctional Center (WRDCC) in St. Joseph, Missouri, while he was incarcerated there. As an atheist, Jackson challenged the WRDCC’s Offenders Under Treatment Program (OUTP) as *540 violating his rights under the First Amendment. The district court, required under the Prison Litigation Reform Act to screen prisoner complaints prior to service, dismissed the complaint as failing to state a claim under which relief may be granted. 28 U.S.C. § 1915A(b)(l). While Jackson named in his complaint several officials as defendants in their individual capacities, the only claims remaining on appeal concern Larry Crawford (Director of the Missouri Department of Corrections [MDOC]), Bill Burgess (WRDCC Warden), and Ms. Salsbury (WRDCC OUTP Director). With jurisdiction under 28 U.S.C. § 1291, we reverse the dismissal of Jackson’s complaint and remand to the district court for further proceedings.
I. Background
As part of a stipulation with the MDOC Board of Probation and Parole, Randall Jackson, an atheist, was required to attend the Offenders Under Treatment Program for substance abuse. Appendix (App.) at 22. Jackson understood he was required to complete this program to be eligible for early release on parole. In his complaint, Jackson said the program “had required meetings [and] invoked religious tenets by using the serenity prayer and religious meditations.” Id. at 7. When Jackson objected to the prayer, Salsbury and other staff advised him to “act as if,” a term used in the program, meaning to “assume a role or attitude even if you don’t feel like it” and further defined as “[a] tool used to assist one in ‘trying on’ new patterns of thought and behavior.” Id. at 9 (citing Kansas City Community Center, 180-day Therapeutic Community Substance Abuse Treatment Programs Resident Handbook, rev. January 2006). Salsbury and staff suggested that Jackson “use God as an acronym for ‘good orderly direction.’ ” Id. The complaint further stated: “It is my assertion that I was being coerced by and through an atmosphere designed and intended to change or alter my thinking and behavior. That it would induce conformity by adding pressure and leverage through the hope and desire of achieving a ‘Placement on Parole.’ ” Id. at 9-10.
Jackson pursued a grievance, seeking to be transferred to a secular treatment program. His grievance was denied, and Jackson appealed to the MDOC Division of Adult Institutions. MDOC denied the appeal as well. Although the timing and circumstances are unclear, Jackson ultimately left the program. Jackson believes he was denied an early release on parole for failure to complete OUTP; he included with his complaint a document from the MDOC Board of Probation and Parole, which states: “Because you have not completed a Board stipulated treatment program, the Board is denying your credit release date. Your previously scheduled release date will remain in effect.” Id. at 27. The record at this stage contains no further information regarding the impact of this MDOC decision on Jackson’s sentence. Jackson filed suit pro se on January 6, 2012, though he is represented by counsel on appeal. As part of his requested relief, Jackson seeks the removal of “Alcoholics Anonymous [AA] and other religious components” from MDOC treatment programs. Id. at 7-8. In dismissing Jackson’s suit with prejudice, the district court found that his claims failed because “personal involvement is a prerequisite to liability under § 1983,” and “withdrawing voluntarily from a program does not create a constitutional right to an early release.”
II. Discussion
We review de novo the district court’s dismissal of a prisoner’s claim under 28 U.S.C. § 1915A, “accepting as true all of the factual allegations contained in the complaint and affording the plaintiff all *541 reasonable inferences that can be drawn from those allegations.” Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir.2011) (reversing pre-service dismissal of a pro se prisoner’s claim under 42 U.S.C. § 1983). In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold “a pro se complaint, however inartfully pleaded, ... to less stringent standards than formal pleadings drafted by lawyers.” Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quotation omitted); see also Whitson v. Stone Cnty. Jail, 602 F.3d 920, 922 n. 1 (8th Cir.2010).
A. First Amendment Claim
The district court’s disposition of Jackson’s First Amendment claim — “withdrawing voluntarily from a program does not create a constitutional right to an early release” — implicates two issues. We address first the question of Jackson’s withdrawal, then any constitutional rights at stake.
The district court concluded, and the state argues on appeal, that Jackson voluntarily withdrew from the substance abuse program, and that voluntary withdrawal is fatal to his case. Jackson claims, however, that “[d]ue to the religious components of the program and lack of any foreseeable remedy, my choices were to withdraw from the program or remain exposed to those religious elements.” App. at 10. Whether Jackson’s withdrawal from the program was indeed voluntary (a word Jackson never uses in his complaint) or was the result of state-sponsored coercion is yet to be determined. See Inouye v. Kemna, 504 F.3d 705, 714 (9th Cir.2007) (“The Hobson’s choice [parole officer] Na-namori offered Inouye — to be imprisoned or to renounce his own religious beliefs— offends the core of Establishment Clause jurisprudence.”). At this stage of the litigation, dismissal of the complaint on this ground was premature.
We next evaluate Jackson’s constitutional claim. He alleges that being required to attend and complete a nonsecular substance abuse, treatment program in order to be eligible for early parole violates the Establishment Clause of the First Amendment. In Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the Supreme Court emphasized that, “at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise.” Id. at 587, 588-99, 112 S.Ct. 2649 (recognizing that unconstitutional coercion may be exercised both directly, such as by mandatory attendance at a religious exercise, and indirectly).[1] The Eighth Circuit has indicated that the Lee coercion test should also be applied in the prison context to assess the constitutionality of requiring or conditioning benefits on attendance at potentially religious treatment programs. See Munson v. Norris, 435 F.3d 877, 880-81 (8th Cir.2006) (citing Lee when instructing lower court to evaluate prisoner’s First *542 Amendment claim under the Establishment Clause, which “prohibits government from coercing anyone to participate in religion or its exercise”) (also citing as cases applying Lee in the prison context Warner v. Orange Cnty. Dep’t of Prob., 115 F.3d 1068 (2d Cir.1996); Kerr v. Farrey, 95 F.3d 472 (7th Cir.1996); Griffin v. Coughlin, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996), cert. denied, 519 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997)).
In evaluating a plaintiffs claim “that the state is coercing him or her to subscribe to religion generally, or to a particular religion,” the Seventh Circuit in Keit v. Farrey described a three-step inquiry: “first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?” 95 F.3d at 479. The Ninth Circuit has since adopted the Kerr criteria in evaluating this type of claim. See Inouye, 504 F.3d at 713; see also Warner, 115 F.3d at 1075. We agree that Kerr is “particularly useful” “with regard to determining whether there was governmental coercion of religious activity.” Inouye, 504 F.3d at 713. Accordingly, we will apply the Kerr court’s three-part formulation of the Lee coercion test to Jackson’s First Amendment claim of governmental coercion.
In Jackson’s case, no one disputes that the state acted; thus, Jackson has met the first prong. As for the third prong, the district court did not address whether the program was religious or secular, although the state’s appellate brief did not refute Jackson’s statement that OUTP contains some religious content. At oral argument, state’s counsel was “willing to recognize that there are religious aspects to the traditional AA program,” but counsel did not know whether OUTP included such aspects beyond Jackson’s statements in his complaint regarding the Serenity Prayer and religious meditation. We assume the truth of Jackson’s allegations for purposes of reviewing a pre-service dismissal, and we accept that OUTP contained some religious content. At the core of the dispute, therefore, is the second prong of the Kerr test: whether the state’s action constituted coercion.
The state argues that participation in OUTP was optional and, as a result, not coerced. Assuming the truth of the facts pled in Jackson’s pro se complaint, however, he believed himself required to complete it based on a parole stipulation. The parties agree that even if Jackson had completed the substance abuse treatment program, he would not have been guaranteed early parole. Under Missouri law, compliance with the parole stipulation meant that Jackson’s case would be referred to the Missouri Board of Probation and Parole, and the Board would then consider his potential early release. Mo. Rev.Stat. §§ 217.364, 217.690 (2013). Jackson’s pro se complaint and attached documents do not reveal whether this is the only route to early parole or how many OUTP participants receive it.[2] Jackson’s progress toward early parole did, however, stop when he left the substance abuse treatment program.
Based on the existing record, it is also unclear whether the state would have permitted Jackson to remain in, and graduate from, OUTP if he refrained from actively *543 participating in only the faith-based portions of the curriculum. Even if the state had allowed Jackson to sit quietly during the prayers and other religious components, however, the state’s action may still amount to coercion. See Warner, 115 F.3d at 1076 (“The fact that Warner managed to avoid indoctrination [by not actively participating] despite the pressure he faced does not make the County’s program any less coercive, nor nullify the County’s liability.”); Kerr, 95 F.3d at 474 (finding coercion even though “inmates were required to ‘observe’ the NA [Narcotics Anonymous] meetings,” “not required to ‘participate’ ”).
While inmates have no constitutional right to early parole, Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), Jackson does have the right to be free from unconstitutional burdens when availing himself of existing ways to access the benefit of early parole. The fact that Jackson did not have a constitutional right to, or statutory guarantee of, early parole does not preclude him from stating a claim of unconstitutional coercion. “It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice.” Lee, 505 U.S. at 596, 112 S.Ct. 2649; Kerr, 95 F.3d at 474-75 (state “impermissibly coerced inmates to participate in a religious program” when the “penalty” for nonattendance at NA meetings was a potential “adverse impact on an inmate’s security risk rating” and on his parole eligibility, though no inmate had ever received the risk rating penalty); Griffin, 649 N.Y.S.2d 903, 673 N.E.2d at 106 (state’s requirement that inmates attend substance abuse treatment program’s AA meetings to be eligible for the jail’s discretionary Family Reunion Program was coercive). The Missouri Board of Probation and Parole may have discretion in deciding whether to grant early parole to an OUTP graduate, but that fact alone does not shield the defendants from potential liability for implementing a program that is alleged to violate the First Amendment.
We conclude, based on the allegations in the complaint, that Randall Jackson has pled facts sufficient to state a claim that a parole stipulation requiring him to attend and complete a substance abuse program with religious content in order to be eligible for early parole violates the Establishment Clause of the First Amendment.
B. Personal Involvement
To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiffs constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his “failure to properly supervise and train the offending employee” caused the constitutional violation at issue: Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir.2001) (quotation omitted); Crooks v. Nix, 872 F.2d 800, 804 (8th Cir.1989). Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in “creating, applying, or interpreting a policy” that gives rise to unconstitutional conditions. Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir.2009) (citing Trudeau v. Wyrick, 713 F.2d 1360, 1367 (8th Cir.1983)). In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, we assess each defendant relative to his authority over the claimed constitutional violation.
*544 Jackson alleged that as MDOC Director, Crawford “knew or should have known of the changes of Constitutional policy and how they [affected] inmate[s] like me under his jurisdiction.” App. at 18. He asserted that WRDCC Warden Burgess (identified in the complaint only as the warden) “knew or should have know[n] changes in Constitutional matters concerning the facility in which he presides.” Id. Moreover, “[i]f he would have taken action,” Jackson may not have withdrawn from the program. Id. He stated that Salsbury, director of the WRDCC treatment program, suggested ways for him to remain in the religious program that might conflict less with his atheism, and that as director, “she at the very least could have allowed me not to attend the religious elements of the program.” Id. at 19.
Jackson, represented by counsel on appeal, has supplemented the allegations in his complaint with legal authority for defendants’ control over the prison system. In reviewing the dismissal of a pro se complaint, we construe such complaints liberally, but we do not address legal or factual claims presented for the first time on appeal. Stone v. Harry, 364 F.3d 912, 914 (8th Cir.2004). We distinguish, however, between adding claims on appeal and fleshing out claims that were initially inartfully pled. “When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson’s claim to be considered within the proper legal framework.” Id. at 915. Taking a similar approach to our de novo review, we find Jackson’s arguments on appeal are properly before us, as they provide additional legal support for the claims he made at the district court as a pro se litigant.
Jackson asserted that by virtue of their positions within the prison system, Crawford and Burgess can be held liable under § 1983. The authority of the state DOC director to make prison-wide policy decisions may be sufficient to give rise to liability under § 1983. We have found a DOC director may be “responsible for his own failure to act,” based on his statutory duty to administer the Department of Corrections and “supervise the administration of all institutions, facilities and services under the Department’s jurisdiction” and his authority to change the challenged policies. Messimer v. Lockhart, 702 F.2d 729, 732 (8th Cir.1983) (quoting Ark. Stat. Ann. § 46-105(a) (1977)). Moreover, an allegation that the DOC director authorized an unconstitutional policy may be sufficient to state a claim “for actions allegedly taken directly by” the director. Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir.1999).
Under Missouri law, “[t]he general supervision, management and control of the department of corrections shall be in the director of corrections.” Mo.Rev.Stat. § 217.025(1) (2013). As such, MDOC Director Crawford is required to “establish the duties and responsibilities of employees of the department” and “supervise their work assignments.” Mo.Rev.Stat. § 217.025(3) (2013). He is “responsible for the implementation of uniform policies and procedures governing offenders and staff,” and he must “make and enforce such rules, regulations, orders and findings as the director may deem necessary for the proper management of all correctional centers and persons subject to the department’s control.” Mo.Rev.Stat. §§ 217.025(3), (6) (2013). MDOC is statutorily required to “establish rules determining how, when and where an offender shall be admitted *545 into or removed from the [Offenders Under Treatment] program.” Mo.Rev.Stat. § 217.364(1) (2013); see also Mo.Rev.Stat. § 217.364(4) (2013) (the program’s curriculum “may include education, treatment and rehabilitation programs”). Given Crawford’s statutory duties, including those associated with administration of the OUTP, Jackson’s complaint alleged sufficient personal involvement as to MDOC Director Crawford.
To state a claim against Warden Burgess, Jackson must plead facts to show that Burgess was directly involved in making, implementing or enforcing a policy decision that “ereate[d] unconstitutional conditions.” Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985). Our case law is clear that the warden’s general supervisory authority over prison operations does not make him liable under § 1983. Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir.2007); Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir.1987). We note that personal involvement may be assessed differently depending on the alleged constitutional violation at issue. In cases regarding prison violence, for instance, it can be difficult to demonstrate the warden’s “knowledge of, or connection with” individual incidents between guards and prisoners or among prisoners. Messimer v. Lockhart, 702 F.2d 729, 732 & n. 4 (8th Cir.1983) (citation omitted) (contrasting “isolated instances of alleged mistreatment” with “policy decisions made by those in charge of the prison”). Here, although Jackson challenges the curriculum of a treatment program — the choice of which was inherently a policy decision — and its effect on him, his conclusory statement that Warden Burgess “knew or should have known” of the 'alleged First Amendment violation is insufficient. - Instead, Jackson must plead facts that plausibly show direct involvement by the warden in the formation, implementation, or enforcement of that policy, which at this stage of the litigation he has failed to do.
Jackson’s claims regarding Sals-bury’s involvement are more specific than his statements regarding the other defendants. In particular, he alleged that as director of the treatment program, she could have allowed him to avoid the religious portions of the program but still remain enrolled in order to comply with his parole stipulation. App. at 19. The scope of her authority as to the OUTP curriculum and inmates’ participation in it is unclear. Even if she did not determine the OUTP curriculum, however, the claim concerns her ability to help ameliorate the constitutional violation alleged. See Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir.2002) (First Amendment Free Exercise claim stated when prisoner alleged that one defendant “refused to help him when he told her” that another defendant had told him to “‘drop the subject’ of being in the hole” for his religious fasting). Affording Jackson reasonable inferences from the facts in his complaint, we find that he has plausibly alleged Salsbury’s personal involvement.
In sum, Jackson has pled facts sufficient to show the personal involvement required for Crawford and Salsbury to bear § 1983 liability. As to Burgess, at this stage of the litigation, he has not.
III. Conclusion
We hold that the district court erred in dismissing with prejudice Jackson’s claims against Crawford, Burgess, and Salsbury. Jackson’s complaint alleged facts sufficient to state a plausible claim against Crawford and • Salsbury. We therefore vacate the district court’s dismissal order as against these three defendants; we grant Jackson leave to amend his complaint as appropriate; and we remand for further proceed *546 ings regarding the claims against Crawford and Salsbury.

. In considering this pre-service dismissal of a pro se complaint, with a record that we believe is simply too sparse for much fact finding, it' is sufficient for us to address Jackson’s claim of direct coercion: that he was required by his parole stipulation to attend OUTP. In doing so, we do not foreclose the possibility that he may also state a claim of indirect coercion based on the use of potential early parole as an incentive to complete a nonsecular substance abuse treatment course and the religious observance therein. See, e.g., DeStefano v. Emergency Hous. Grp., Inc., 247 F.3d 397, 412 (2d Cir.2001) ("Government and those funded by government 'may nó more use social pressure to enforce orthodoxy than [they] may use more direct means.’ ” (quoting Lee, 505 U.S. at 594, 112 S.Ct. 2649, and citing Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 312, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000))).

. At oral argument, counsel referred to good-time credits as another way to receive early parole. At this early stage, however, the record does not reflect what additional early parole programs may exist, if any; how good-time credits interact with the early parole available through OUTP; and whether Jackson might have been eligible for early parole via good-time credits as well.