# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-1826

_____

Ginger P. Elder; Benjamin Taylor; Jacquelyn A. Dearmore

*Plaintiffs - Appellees*

v.

Cindy Gillespie, Director, Arkansas Department of Human Services, in her official and individual capacity; Jerald Sharum, Director, Division of Provider Services and Quality Assurance, Arkansas Department of Human Services, in his official capacity; Richard Rosen, Managing Attorney, Office of Chief Counsel, Arkansas Department of Human Services, in his official and individual capacity; David W. Sterling, Chief Counsel, Arkansas Department of Human Services, in his official and individual capacity; Craig Cloud, Former Director, Division of Provider Services and Quality Assurance, Arkansas Department of Human Services, in his individual capacity; Mark White, Deputy Director, Division of Aging, Adult and Behavioral Health Services/Chief of Staff to Gillespie and Chief Legislative and Intergovernmental Affairs Officer, Arkansas Department of Human Services, in his official and individual capacity

*Defendants - Appellants*

John Does, in their official and individual capacities

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: January 13, 2022
Filed: December 9, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

Ginger Elder, Jacqueline Dearmore, and Benjamin Taylor (collectively, "plaintiffs") sued various officials of the State of Arkansas alleging that these officials[1] (collectively, "ADHS defendants") violated their due process rights under the Fourteenth Amendment. The officials moved to dismiss the complaint with prejudice. The district court[2] denied the motion. We affirm.

## I. *Background*

Medicaid is a federal medical insurance program available to individuals with limited economic resources. The federal Center for Medicaid and Medicare Services (CMS) is the agency charged with administering the federal Medicaid program. Arkansas has elected to participate in the federal Medicaid program.

_____

[1]The lawsuit named Cindy Gillespie, Director of the Arkansas Department of Human Services (ADHS), in her official and individual capacity; Craig Cloud, Director of Division of Provider Services and Quality Assurance of ADHS, in his individual capacity; Richard Rosen, Managing Attorney of the Office of Chief Counsel of ADHS, in his official and individual capacity; Jerald Sharum, Director of the Division of Provider Services and Quality Assurance of ADHS, in his official capacity; David Sterling, Chief Counsel of ADHS, in his official and individual capacity; Mark White, Chief of Staff to Gillespie and Chief Legislative and Intergovernmental Affairs Officer of ADHS, in his official and individual capacity; and John Does, in their official and individual capacities

[2]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

Arkansas's Medicaid program is administered solely through ADHS. The Medicaid program includes other optional services provided through Home and Community-Based Services (HCBS) programs. The HCBS programs provide an alternative for individuals who, without such programs, would likely require placement in a long-term care facility. The premiere HCBS program in Arkansas is ARChoices. ARChoices provides attendant-care services, home-delivered meals, and a personal-emergency response system. It also provides a range of state plan Medicaid services.

At least annually, ADHS conducts an eligibility assessment to determine whether individuals remain eligible for its services and the amount of services to allocate to them. Historically, ADHS relied on the professional discretion of an ADHS registered nurse to determine an individual's eligibility. In January 2016, ADHS switched to a computer-based system that used an algorithm called Resource Utilization Groups (RUGs). Following the switch, almost half of the ARChoices beneficiaries received a service reduction in their benefits.

Beginning in January 2019, ADHS began using a new assessment tool known as the Arkansas Independent Assessment (ARIA).[3] After completing the assessment, an ARChoices Person-Centered Service Plan (PCSP) is generated to allocate the appropriate services to eligible individuals. Beneficiaries and applicants are notified of their eligibility results once they receive a copy of the PCSP along with a Notice of Action from an ADHS nurse. The Notice of Action triggers a person's right to an appeal.

---

[3] ARIA involves home visits to applicants or beneficiaries by a nurse employed by a company called Optum. The nurses ask questions using the ARIA assessment tool. The responses provided are then run through an algorithm to determine eligibility in a tier system.

Federal and state Medicaid regulations require ADHS to notify beneficiaries of an adverse action at least ten days before the date that the adverse action takes effect. And if the beneficiary timely appeals, then ADHS may not reduce or terminate their benefits until after the outcome of a hearing.

The plaintiffs each have different disabilities but were all beneficiaries of the ARChoices Medicaid program; they all received in-home care services for many years.[4] Prior to implementation of ARIA, each of the plaintiffs received between 30 to 33 hours of in-home care services per week. After its implementation, Dearmore's and Taylor's services were reduced, while Elder's services were terminated completely. The plaintiffs allege that the Notice of Actions provide insufficient notice and lack rationality for the reductions imposed. They assert that ADHS's computer systems are programmed to terminate or reduce beneficiaries' benefits either immediately or no later than the tenth day following notification of an adverse action.

ADHS terminated or reduced the plaintiffs' benefits[5] despite their requests that the benefits continue without interruption, pending the outcome of their hearing. ADHS concedes this occurred but states that it was done mistakenly. ADHS restored the plaintiffs benefits once they sued or their attorney contacted ADHS.

Management and supervision of the ARChoices program involves several ADHS divisions and offices[6] that handle the termination or reduction of services. All

---

[4]The services varied from attendant care to doing their laundry, helping them with personal hygiene, and accompaniment to medical appointments.

[5]Both Dearmore and Taylor went without services for approximately three months, and Elder went without services for approximately two months.

[6]The plaintiffs complaint alleges that these offices may be involved in the process of terminating or reducing ARChoices beneficiaries services: Office of Long-Term Care (OLTC), an office within the Division of Provider Services and Quality

appeal requests are processed through the Office of Appeals and Hearings (OAH). The plaintiffs allege that staff in OAH, OLTC, DMS, and the general counsel section failed to review requests for appeals to determine whether they were filed timely to avoid benefit interruption. The plaintiffs further allege an undue delay before DAAS/DAABHS staff were assigned to review appeal requests. And the plaintiffs maintain that at least 30 beneficiaries timely appealed, but ADHS failed to continue their benefits until legal counsel contacted ADHS.

The plaintiffs brought claims against the ADHS defendants in their official and individual capacities, claiming that their rights under the Due Process Clause of Fourteenth Amendment were violated. Dearmore also brought claims against the ADHS defendants in their official and individual capacities for violations of her right to adequate notice under the Due Process Clause of the Fourteenth Amendment. The plaintiffs requested, among other things, a temporary restraining or preliminary injunction, a declaratory judgment, a permanent injunction, and a money judgment.

The plaintiffs alleged that the ADHS officials are involved in the review and approval process for the ARChoices program. The plaintiffs alleged that "ADHS assesses program participants at least once every year to determine their functional eligibility and, if eligible, to develop an updated person-centered service plan" and that "[b]eneficiaries can be subject to re-assessment more than once a year if they experience a change in status or service needs." R. Doc. 31, at 15–16. The plaintiffs further alleged that "ADHS has no plans to switch to a different assessment tool, allocation methodology, or notice of action than those now used." *Id.* at 16. However, the plaintiffs acknowledged that the COVID-19 pandemic delayed their reassessment.

Assurance (DPSQA); the Division of Aging, Adult, and Behavioral Health Sciences (DAABHS), which was formerly the Division of Aging and Adult Services (DAAS); the Division of Medical Services (DMS); and the Division of County Operations (DCO).

The ADHS defendants responded to the complaint with a motion to dismiss. In the motion, they argued that (1) they are entitled to sovereign immunity and that the plaintiffs' claims against the ADHS defendants in their official capacities are not subject to the *Ex Parte Young*[7] exception; (2) the plaintiffs failed to state a claim for relief because the plaintiffs' benefits were restored pending appeal, meaning that there was no ongoing constitutional violations; (3) the plaintiffs failed to demonstrate future injury and are not entitled to equitable relief; (4) the plaintiffs failed to show that they realistically face a future, temporary interruption of the ARChoices benefits, meaning that they have not met the requirements for seeking injunctive relief in federal court; (5) the allegations in support of Dearmore's due-process and adequate-notice claims are conclusory and insufficient, and Dearmore's request for injunctive relief is not cognizable against the ADHS defendants in their individual capacities; and (6) the ADHS defendants are entitled to qualified immunity in their individual capacities.

The plaintiffs replied that the relief they seek will prevent an ongoing deprivation of constitutional rights. They contended that their complaint allegations regarding ADHS's practices for terminating benefits and processing appeals sufficiently allege entitlement to equitable relief.

The district court denied the motion to dismiss. It concluded that the plaintiffs had alleged sufficient facts in their consolidated complaint to support their claims against the ADHS defendants in their official capacities. According to the court, the complaint adequately alleged entitlement to prospective injunctive relief to remedy ongoing violations of federal law and to overcome the ADHS defendants' assertion of sovereign immunity. The court also found that the plaintiffs had alleged sufficient facts to support an injury in fact. Specifically, they faced future, temporary interruption of their ARChoices benefits. Thus, the district court found that the

---

[7]*Ex parte Young*, 209 U.S. 123 (1908).

plaintiffs have standing to bring their claims, including but not limited to their official-capacity continuation-of-benefits claims.

Applying the principles of *Mathews v. Eldridge*, 424 U.S. 319 (1976), the district court also concluded that Dearmore adequately alleged a violation of her due process rights to adequate notice. The district court noted that Dearmore is a Medicaid recipient with limited resources like the plaintiffs in *Bliek v. Palmer*, 102 F.3d 1472 (8th Cir. 1997), and *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970). The district court reasoned that Dearmore likely lacks the financial resources to hire an attorney to assist her in interpreting the notice that she received from ADHS. Ultimately, the district court concluded "that plaintiffs sufficiently plead[ed] that Ms. Dearmore's notice was not complete, not stated in plain language, and not reasonably calculated to afford Ms. Dearmore an opportunity to raise her objections to ADHS's proposed actions." R. Doc. 38, at 28.

The district court also determined that the plaintiffs sufficiently stated claims against each of the ADHS defendants in their individual capacities for liability under 42 U.S.C. § 1983 and that the ADHS defendants were not entitled to judgment as a matter of law or dismissal of the plaintiffs' claims against them in their official or individual capacities.

The district court denied qualified immunity to the ADHS defendants on the plaintiffs' individual-capacity claims, stating, "Plaintiffs' consolidated complaint states facts showing that they will plausibly be able to establish violations of their constitutional rights with respect to their continuing benefits claims and that those rights were clearly established." *Id*. at 33. The district court ruled similarly with respect to Dearmore, concluding that Dearmore had a clearly established right to notice detailing the proposed termination of her ARChoices benefits and the reasons for the proposed termination.

-7-

Finally, the district court rejected the ADHS defendants' argument that the plaintiffs failed to state a claim on "count one which alleges claims against all defendants in their official capacity for continuation of benefits and plaintiffs' count two which alleges claims against all defendants in their official capacity for their alleged failure to provide Ms. Dearmore with due process and adequate notice." *Id.* at 41 (citing Fed. R. Civ. P. 12(b)(6)). The court concluded that the plaintiffs alleged sufficient facts which, if accepted as true, state a claim for relief against the ADHS defendants in their official capacities. This appeal followed.

## II. *Discussion*

The ADHS defendants ask this court to reverse the district court's denial of their motion to dismiss. They argue that (1) sovereign immunity bars the plaintiffs' official-capacity claims; (2) the plaintiffs lack Article III standing to pursue their claims for equitable, declaratory, and injunctive relief; and (3) the ADHS defendants are entitled to qualified immunity on the plaintiffs' individual-capacity claims.

We review the district court's denial of the ADHS defendants' motion to dismiss de novo. *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019). If a defense of qualified immunity is raised, we reverse if the ADHS defendants are entitled to immunity on the face of the complaint. *Id*.

## A. *Sovereign Immunity*

On appeal, the ADHS defendants argue that the Eleventh Amendment bars suits by individuals brought against a state or its agencies or departments, regardless of the relief sought.

The Eleventh Amendment to the United States Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "While the

Amendment by its terms does not bar suits against a State by its own citizens, [the] [Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). But "the Supreme Court [has also] recognized sovereign immunity does not bar 'certain suits seeking declaratory and injunctive relief against state officers in their individual capacities' based on ongoing violations of federal law." *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)). "The *Ex parte Young* doctrine rests on the premise 'that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.'" *Id.* (quoting *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)).

While the ADHS defendants concede the *Ex Parte Young* doctrine could potentially subject the ADHS defendants to a lawsuit in their official capacity, they maintain that to do so would require the plaintiffs to show an ongoing violation of federal law and to seek only prospective injunctive relief. The ADHS defendants assert that "allegations of *past* illegal conduct do not establish a *present* case or controversy regarding injunctive relief unless accompanied by continuing, present effects." Appellants' Br. at 27. The ADHS defendants further contend that the plaintiffs are not presently suffering from a violation of federal law and thus they cannot overcome ADHS's sovereign immunity.

We disagree. The plaintiffs' ARChoices benefits must be reassessed each year and, according to the plaintiffs' allegations, "ADHS has no plans to switch to a different assessment tool, allocation methodology, or notice of action than those now used." R. Doc. 31, at 16. The very harm alleged remains likely to recur barring a change in the state's operation of the program or judicial intervention. Under these circumstances, we conclude that sovereign immunity does not bar this suit.

B. *Standing*

The ADHS defendants argue that even if sovereign immunity does not bar the plaintiffs' claims, the plaintiffs still lack standing because they do not face a real, immediate threat of future injury.

A motion to dismiss for lack of standing presents a jurisdictional question that is properly analyzed under Federal Rule of Civil Procedure 12(b)(1). *See Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018).

> [T]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (alteration in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

The ADHS defendants argue that the plaintiffs do not face a real, immediate threat of future injury because all the plaintiffs have had their benefits restored. On that basis, they contend that there is no prospective relief for the court to award. They assert that the past suspension of the plaintiffs' benefits does not show a present violation.

The district court rejected the ADHS defendants' argument, concluding that the conduct leading to the present case is repeatable because all of the plaintiffs' benefits will be reassessed per an unchanged ADHS policy.

As the ADHS defendants point out, Dearmore and Taylor have already been re-assessed and neither has received a notice indicating that their care hours are

-10-

affected. But even assuming they lack standing, Elder does not because her benefits have *not* been reassessed. And, in this case, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 668 (8th Cir. 2022) ("Constitutional standing requires that at least one plaintiff demonstrate [standing] . . . ."). The plaintiffs' complaint is consolidated, their positions are nearly identical, and there is no guarantee that under the present system, the conduct that led to both Dearmore and Taylor's benefits interruption will not occur again. *See Sec'y of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984) (standing existing for one plaintiff was sufficient for all plaintiffs where their positions in the case were identical). Therefore, we hold that the plaintiffs have standing.

## C. *Qualified Immunity*

The ADHS defendants argue that they are entitled to qualified immunity in their individual capacities on Dearmore's notice claim and the plaintiffs' supervisory liability claims.

"We review *de novo* the denial of a motion to dismiss on the basis of qualified immunity. To prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). Government officials claiming a qualified immunity defense are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### 1. *Dearmore's Notice Claim*

The ADHS defendants assert that the notice accompanying Dearmore's reduction in care hours does not violate Dearmore's due process rights under the

Fourteenth Amendment. Alternatively, they contend that even if the notice that Dearmore received is constitutionally deficient, Dearmore's right to a more particularized notice is not clearly established.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citation omitted). "Adequate notice is integral to the due process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.'" *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997).

In *Jacobs v. Gillespie*, the district court held that DHS provided deficient notice to ARChoices beneficiaries under the RUGs methodology. 3:16-cv-119-DPM (E.D. Ark. Nov. 1, 2016). The court ordered that the notice "be in plain and clear terms," "explain why benefits are being reduced," "explain the benefit reduction with specific references (as applicable) to" the methodology, and "be as specific as reasonably practicable about the beneficiary's health conditions and reduced benefits." *Id.*; *see also K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 970–74 (9th Cir. 2015) (affirming district court's grant of preliminary injunction on due process grounds where the notice of a Medicaid budget reduction "did not specify why individual budgets had decreased"); *Baker v. State*, 191 P.3d 1005, 1008 (Alaska 2008) (reversing trial court's denial of preliminary injunction on due process grounds where the notice of Medicaid personal care hours reduction based on an assessment tool failed to "show how and why" the agency reached the decision); *L.S. by & through Ron S. v. Delia*, No. 5:11-cv-354-FL, 2012 WL 12911052, at *14 (E.D.N.C. Mar. 29, 2012) (granting preliminary injunction on due process grounds to Medicaid beneficiaries whose annual services were being reduced pursuant to an assessment system because beneficiaries "did not understand the score" or "how the score was reached"); *M.A. v. Norwood*, 133 F. Supp. 3d 1093, 1100 (N.D. Ill. 2015) (denying

motion to dismiss a claim of inadequate notice of Medicaid in-home nursing cuts where the notice stated only that the cut was "[b]ased on the individual assessment and the medical documents provided" (alteration in original)).

Here, the consolidated complaint alleges that, as a matter of policy, practice, or procedure, ADHS automatically terminates or reduces the services of Medicaid beneficiaries. These beneficiaries are subject to adverse agency actions regardless of the timing of any appeal request, which the consolidated complaint maintains is a violation of their Fourteenth Amendment due process rights. Further, the consolidated complaint alleges that, as a matter of policy, practice, or procedure, ADHS provides insufficient notice of the reasons for the reduction in services. This limited notice hampers beneficiaries' ability to counter ADHS's reasons. The consolidated complaint alleges that the notice that Dearmore received failed to inform her of what steps she should take to continue receiving the 143 hours of care per month that she received before the reduction.

We conclude that beneficiaries have a clearly established right to be provided adequate notice of reduction, loss, or termination of benefits. No fundamental difference exists between this case and *Jacobs*: in both cases, beneficiaries suffered a loss of benefits under ARChoices. Dearmore has sufficiently pleaded that ADHS violated her right to notice.

### 2. *Plaintiffs' Supervisory Liability Claims*

The ADHS defendants argue that they are entitled to qualified immunity on the plaintiffs' supervisory liability claims. Specifically, they argue that (1) "none of the consolidated [c]omplaint allegations plausibly allege the existence of a formal policy . . . that violates [the plaintiffs] [d]ue [p]rocess rights," Appellants' Br. at 59, and that (2) the plaintiffs' complaint fails to establish deliberate indifference and the conclusory allegations of failure to train and failure to supervise do not overcome the ADHS defendants' qualified immunity.

-13-

To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights. While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue. Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions. In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, we assess each defendant relative to his authority over the claimed constitutional violation.

*Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (cleaned up).

Both parties cite *Jackson* in support of the proposition that a supervisor can only be liable for creating, applying, or interpreting a policy that gives rise to unconstitutional conditions. In *Jackson* we held a prison warden had qualified immunity when an inmate sued, claiming a treatment program unlawfully imposed religion on him. The inmate claimed that the warden was personally responsible because he "knew or should have known changes in Constitutional matters concerning the facility in which he presides." *Id.* at 544 (cleaned up). We disagreed, holding that the inmate had to "plead facts that plausibly show direct involvement by the warden in the formation, implementation, or enforcement of that policy." *Id.* at 545.

Here, the complaint alleges the existence of a policy that violated the plaintiffs' constitutional rights. The consolidated complaint alleged that ADHS terminated or reduced the plaintiffs' services despite each of them requesting both an administrative hearing and having their services maintained pending the outcome of that hearing. In addition, the consolidated complaint alleged this to be a custom, policy, or practice

of ADHS. The consolidated complaint further alleged that this policy also provided for resuming the benefits if a beneficiary had an attorney or care worker reach out to ADHS within the ten-day appeal period.

The plaintiffs have also alleged involvement by each ADHS defendant in creating, applying, or interpreting this policy. In addition to the allegations above, the plaintiffs alleged that each of the ADHS defendants knew that the continuing benefits systems had early reduction or termination issues prior to January 2019. The plaintiffs also alleged that each ADHS defendant failed to remedy these issues. Additionally, the plaintiffs alleged that each ADHS defendant was involved in either developing, authorizing, or implementing the new process for continuing benefits.

*Jackson* is distinguishable because the plaintiffs here have alleged facts showing the ADHS defendants' direct involvement in the formation, implementation, or enforcement of the alleged policy. The ADHS defendants may at some point demonstrate that qualified immunity applies to the plaintiffs' claims, but at this initial pleadings stage, the plaintiffs have adequately alleged facts to survive a dismissal motion raising the defense.

III. *Conclusion*

Accordingly, we affirm the district court's denial of the motion to dismiss.

_____