# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3144

_____

Carolyn Arnett

*Plaintiff - Appellee*

v.

Larry Norris, In his individual capacity; Ray Hobbs, In his individual capacity
(originally named as Roy Hobbs); Wendy Kelley, In her individual capacity

*Defendants - Appellants*

Linda Dixon, In her individual capacity; John Maples, In his individual capacity;
Maggie Capel, In her individual capacity

*Defendant*s

Nurzuhal Faust, In his individual capacity; Christopher Budnik, In his individual
capacity; Linda Dykes, In her individual capacity

*Defendants - Appellants*

John Wheeler, In his individual capacity; Don Yancey, In his individual capacity;
Stacey Smith, In her individual capacity; Kenneth DeWitt, In his individual
capacity

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: September 18, 2025
Filed: December 3, 2025

_____

Before BENTON, GRASZ, and KOBES, Circuit Judges.

_____

BENTON, Circuit Judge.

Carolyn L. Arnett, an inmate, sued officials of the Arkansas Division of Correction, as relevant here under 42 U.S.C. § 1983. The ADC officials sought summary judgment based on qualified immunity. The district court[1] partly granted and partly denied their motions, finding genuine issues of material fact in her claims against Nurzuhal Faust, Christopher T. Budnik, and Linda D. Dykes. They appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

This court "take[s] as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent that they are not blatantly contradicted by the record. Viewed in this manner, the facts are these." *Dantzler v. Baldwin*, 133 F.4th 833, 836 (8th Cir. 2025).

Arnett, an inmate, lives at the maximum-security McPherson Unit. Kenneth L. DeWitt oversaw the Principles and Applications for Life program there. In 2000, Arnett began in the PAL program. In 2001, DeWitt became the Chaplain there. The same year, Arnett began working as a PAL clerk in his office. ADC policy allowed DeWitt to be alone in his office with female inmates. In September 2014, DeWitt resigned as Chaplain.

_____

[1]The Honorable Kristine G. Baker, Chief Judge, United States District Court for the Eastern District of Arkansas.

-2-

From 2010 until he resigned, DeWitt sexually assaulted Arnett in his office, once a week, at the same time, and on the same day each week. He sexually assaulted two other inmates in the same, regularly scheduled manner. In 2016, DeWitt pled guilty to sexual assault in the third degree.

Arnett sued Faust, Budnik, and Dykes in their individual capacities under 42 U.S.C. § 1983. She alleged they failed to supervise DeWitt and failed to protect her from his weekly sexual assaults. They moved for summary judgment, invoking qualified immunity. The district court concluded that a reasonable jury could find they were aware of DeWitt's sexual abuse and failed to protect Arnett. As for the failure-to-supervise claims, the court found a genuine issue of material fact as to Faust's and Budnik's authority over him. They appeal.

II.

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. Generally, "this court lacks jurisdiction over a denial of summary judgment because such an order is not a final decision." **Morgan v. Robinson**, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (internal quotation marks omitted). Qualified immunity, however, "is effectively lost if a case is erroneously permitted to go to trial." **Faulk v. City of St. Louis**, 30 F.4th 739, 744 (8th Cir. 2022), *quoting* **Mitchell v. Forsyth**, 472 U.S. 511, 526 (1985). *See* **Krout v. Goemmer**, 583 F.3d 557, 564 (8th Cir. 2009) (denial of qualified immunity at summary judgment is a final decision reviewable "through an interlocutory appeal under the collateral order doctrine"). "This court reviews de novo denials of summary judgment based on qualified immunity." **Morgan**, 920 F.3d at 523.

The district court at summary judgment determines "whether there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." **Torgerson v. City of Rochester**, 643

F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted), *quoting **Ricci v. DeStefano***, 557 U.S. 557, 586 (2009). A genuine dispute over a fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson***, 477 U.S. at 248. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." ***Torgerson***, 643 F.3d at 1042, *quoting **Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 150 (2000).

After a denial of summary judgment based on qualified immunity, this court has "jurisdiction to resolve a dispute concerning an abstract issue of law relating to" the defense. ***Pool v. Sebastian Cnty.***, 418 F.3d 934, 943 (8th Cir. 2005) (cleaned up). This court's review is "limited to determining whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established" constitutional rights. ***Thompson v. City of Monticello***, 894 F.3d 993, 997–98 (8th Cir. 2018). This court may review a challenge about "what was known to a person who might be shielded by qualified immunity" to determine if such facts "would inform a reasonable actor that his actions violate an established legal standard." ***Pool***, 418 F.3d at 943. However, this court lacks jurisdiction to review a sufficiency-of-the-evidence claim cloaked in qualified-immunity garb. ***Taylor v. St. Louis Cmty. Coll.***, 2 F.4th 1124, 1127 (8th Cir. 2021). *See **Pool***, 418 F.3d at 943 ("A district court's determination of evidentiary sufficiency is not subject to an interlocutory appeal . . . simply because the determination occurs in a qualified immunity case.").

The defendants argue that the district court erred in denying summary judgment. All three defendants challenge the denial for the failure-to-protect claims, and Faust and Budnik challenge the denial for the failure-to-supervise claims.

The doctrine of qualified immunity protects public officials and officers from § 1983 claims when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Mullenix v.***

-4-

*Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted), *quoting **Pearson v. Callahan***, 555 U.S. 223, 231 (2009). To overcome qualified immunity, a plaintiff must show (1) the presented facts "make out a violation of a constitutional or statutory right," and (2) "that right was clearly established at the time of the defendant[s'] alleged misconduct." ***Morgan***, 920 F.3d at 523. This court need not examine whether Arnett's constitutional rights were clearly established because the defendants failed to raise the issue in their briefing or at oral argument. *See **United States v. Grace***, 893 F.3d 522, 525 (8th Cir. 2018) (an argument not raised in the opening brief is waived). This court thus addresses only whether the facts demonstrate a violation of the Eighth Amendment.

III.

Arnett's failure-to-protect claim has two components: an objective component, which examines the substantial risk of harm to the inmate, and a subjective component, which examines the deliberate indifference of the prison official to that risk. *See **Tucker v. Evans***, 276 F.3d 999, 1001 (8th Cir. 2002).

The objective component "ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." ***Lenz v. Wade***, 490 F.3d 991, 995 (8th Cir. 2007). "A risk of sexual assault is 'substantial' if it occurs with *sufficient frequency* that prisoners are put in reasonable fear for their safety." ***Dean v. Bearden***, 79 F.4th 986, 989 (8th Cir. 2023) (cleaned up) (emphasis added). Here, it is undisputed that DeWitt's frequent sexual abuse posed a substantial risk of serious harm to Arnett.

The subjective component requires that the prison officials have a sufficiently culpable state of mind. *See **Farmer v. Brennan***, 511 U.S. 825, 835–40 (1994) (finding "punishment" under the Eighth Amendment where recklessness is "more blameworthy than negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result"); ***Vandevender v. Sass***, 970 F.3d 972, 978 (8th Cir. 2020) ("[A]n official's failure to alleviate a significant

risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of Eighth Amendment punishment."), *quoting* **Farmer**, 511 U.S. at 838; **Kulkay v. Roy**, 847 F.3d 637, 643 (8th Cir. 2017) ("This court has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference."). For deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **Farmer**, 511 U.S. at 837.

"The showing of actual knowledge is a 'question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" **Krout**, 583 F.3d at 567, *quoting* **Farmer**, 511 U.S. at 842. "An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to the inmates." **Lenz**, 490 F.3d at 995, *citing* **Hope v. Pelzer**, 536 U.S. 730, 738 (2002). While "[a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability," "as the number of incidents grow, and a *pattern* begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible." **Howard v. Adkison**, 887 F.2d 134, 138 (8th Cir. 1989) (emphasis added).

At issue here is whether the record, viewed most favorably to Arnett, raises a genuine dispute about the subjective component of her failure-to-protect claims, that is, whether the defendants were deliberately indifferent to DeWitt's sexual assault. *See* **Farmer**, 511 U.S. at 834–43.

IV.

The defendants contend that the facts do not show deliberate indifference but are only "speculation" and "conjecture." The record, viewed most favorably to Arnett, shows a violation of the defendants' duty to protect her against DeWitt's sexual abuse, of which they were aware.

A.

The district court found the following facts adequately supported:

DeWitt sexually assaulted Arnett on a weekly basis from December 2010 until September 2014 (until the day he was placed on leave), at the same time, on the same day each week. He similarly assaulted two other inmates. One swore that DeWitt called for her early in the morning during the prisoner count. Once in his office, he would re-arrange items to obscure both windows before sexually assaulting her. DeWitt's method was corroborated by Arnett's contemporaneous statement and a civilian-volunteer's email summarizing the complaints of two victims. In her statement, Arnett stated she caught DeWitt having sexual relations with two other victims. Yet another inmate told investigators she detected a change in the three victims' behaviors after they were sexually abused by DeWitt.

The district court examined the Department of Justice's 2003 investigation of McPherson. The DOJ there identified a failure to fully comply with the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq*. The ADC then entered into a Memorandum of Agreement with the DOJ to resolve the issues related to sexual assault at the unit. The district court found that between 2012 and 2015, the ADC neither completely complied with PREA nor conducted official PREA audits. A 2015 DOJ press release showed continued concern over sexual abuse and harassment at McPherson.

The district court considered other accusations of sexual misconduct at McPherson. Arnett swore about multiple accusations of sexual harassment against DeWitt before 2010. She stated that an inmate accused DeWitt of sexual assault in 2001 or 2002. In 2006, a PAL clerk complained about the sexual nature of DeWitt's teachings, including explicit discussions of sexual behavior.

Defendant Faust claims she did not know of any allegations against DeWitt before December 29, 2014 (the date Arnett first tried to make a statement about

DeWitt's abuse to the Warden). The district court, however, identified evidence that Faust oversaw the Chaplains, and that it was her responsibility to monitor DeWitt from 2014 to 2015. Faust acknowledged that ADC policy prohibited the obstruction of the PREA window. However, she gave conflicting testimony about non-PREA windows, saying: first, that the prohibition on obstructing windows applied only to PREA windows, but later, that windows were not to be obstructed at all. Faust confirmed, at some time in 2010, that her office was 25 or 30 feet from DeWitt's, in the same hallway, and on the same side of the hallway. Faust admitted she saw DeWitt alone with female inmates in his office. A reasonable jury could find she was aware from 2010 through 2014 that DeWitt had regular, early-morning visits alone with inmates.

The district court found a genuine dispute of material fact about whether Faust saw DeWitt's obstructed windows, or whether she saw DeWitt sexually assault the victims if the windows were not obstructed. Two victims swore that, for years, DeWitt covered the window to his office when he assaulted them weekly. A reasonably jury could conclude Faust was deliberately indifferent to DeWitt's sexual assault.

Defendant Budnik was a Deputy Warden of security, classification, and field operations at McPherson from June 2014 to August 2015. He testified he was "always doing rounds" of the facility looking for issues, which took him by DeWitt's office. Budnik's office was in the same hallway as DeWitt's, "fifty paces" away. He testified that PREA windows were not to be obscured, but that the non-PREA windows could be obstructed. Budnik confirmed that if a non-PREA window was completely covered, he would do nothing about it. Budnik testified he never saw DeWitt obscure his PREA window, but could not recall if DeWitt ever blocked his non-PREA window. Arnett swore that Budnik once walked in right after DeWitt had raped her, and was adjusting his pants and acting strangely. Based on the reasonable inferences, a reasonable jury could conclude that Budnik was deliberately indifferent to DeWitt's frequent sexual assault of Arnett.

-8-

Finally, Dykes was a Captain at McPherson from 2010 to 2017, making daily rounds through the hallway in front of DeWitt's office. Some days, she walked past DeWitt's office several times. Dykes was also responsible for making sure staff office windows were unobstructed in compliance with PREA and ADC policy. She confirmed that, according to ADC policy, PREA windows had to be completely uncovered, but it would not have concerned her if a non-PREA window was obscured, even if a male staff member was meeting with female inmates. A reasonable jury could conclude that Dykes saw DeWitt obscure the view into his office and was deliberately indifferent to DeWitt's sexual abuse of McPherson inmates.

## B.

This court lacks jurisdiction to review the defendants' challenges to the sufficiency of the district court's findings and inferences about, among other contested issues, the 2003 DOJ investigation, ADC's PREA policy, ADC's investigations of sexual misconduct, the obstruction of DeWitt's windows, or the defendants' actual knowledge of DeWitt's abuse. *Krout*, 583 F.3d at 567. This court cannot review these points that "challenge only the district court's determination that the pre-trial record sets forth a genuine issue of fact." *Pool*, 418 F.3d at 944 (cleaned up). And nothing in this record "clearly contradicts the district court's factual determinations or [Arnett]'s assertion[s]" on these points. *Taylor*, 2 F.4th at 1127. This court cannot "cast aside the district court's factual findings, analyze the factual record, and resolve genuine factual disputes against the non-moving party." *Id*.

This court has jurisdiction to review whether the facts the district court found adequately supported by the record vindicate its legal conclusion. *See Kong ex rel. Kong v. City of Burnsville*, 960 F.3d 985, 991 (8th Cir. 2020). Viewing the facts most favorably to Arnett, a reasonable jury could find the defendants were deliberately indifferent to DeWitt's abuse, violating her clearly established Eighth Amendment rights. *See Farmer*, 511 U.S. at 834–36, 844–45; *Young v. Selk*, 508 F.3d 868, 873–74 (8th Cir. 2007). *Cf. Tucker*, 276 F.3d at 1002–03. The district

-9-

court did not err in denying the defendants' motions for summary judgment against Arnett's failure-to-protect claims.

V.

Faust and Budnik argue that qualified immunity bars the failure-to-supervise claims. They argue neither of them directly supervised DeWitt nor were above him in the chain of command.

A supervisor may be liable under § 1983 if "his failure to properly supervise and train the offending employee caused the constitutional violation at issue." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (internal quotation marks omitted). A failure-to-supervise claim faces a rigorous standard that the superior (1) had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right; (2) was deliberately indifferent to or authorized such violations; (3) failed to take remedial action; and (4) that failure caused the inmate's injury. *See Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010); *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994), *quoting Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Even if the supervisors are not involved in the day-to-day operations that led to the incident at issue, personal involvement may be found if the supervisors were involved in "creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." *Nixon*, 747 F.3d at 543 (internal quotation marks omitted). *See generally Wadsworth v. Nguyen*, 129 F.4th 38, 63 (1st Cir. 2025) (to qualify as a "supervisor," one "must have had some degree of control over" the offending official (cleaned up)).

Faust and Budnik emphasize that they lacked the requisite knowledge to notice a pattern of unconstitutional acts and did take some remedial action. This court lacks jurisdiction to review Faust's and Budnik's challenges to the district court's findings and inferences about their supervisory role and remedial actions.

-10-

*See* **Krigbaum**, 808 F.3d at 340; **Pool**, 418 F.3d at 943–44.  Construing the record most favorably to Arnett, a reasonable jury could conclude that Faust and Budnik had authority to supervise and give orders to DeWitt and that they failed to take remedial action.  And, viewing the record as described above, the district court found a genuine issue of material fact about Faust's and Budnik's deliberate indifference to DeWitt's frequency and pattern of sexual assault.

The district court did not err in denying summary judgment on the failure-to-supervise claims.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____