# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-1428

_____

Lawrence Allen

*Plaintiff - Appellant*

v.

Chris Monico; Jonathan Kossow

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 17, 2021
Filed: March 14, 2022

_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

A state jury found Lawrence Allen (Allen) not guilty of a drug trafficking offense. After his acquittal, he brought the current civil rights action against two Lincoln, Nebraska, police officers alleging they conspired to include false statements in an affidavit of probable cause executed shortly after his arrest. Allen characterizes the alleged conspiracy as resulting in his unreasonable arrest, false imprisonment, and

malicious prosecution. The district court[1] granted a motion to dismiss, holding the officers were entitled to qualified immunity because the affidavit provided arguable probable cause for Allen's arrest even without the allegedly false statements. We affirm.

I.

On review of a motion to dismiss, we read the complaint in the light most favorable to the plaintiff, making all reasonable inferences of fact in the plaintiff's favor. See Jacobson Warehouse Co. v. Schnuck Markets, Inc., 13 F.4th 659, 668 (8th Cir. 2021). We draw the following facts from Allen's complaint and the affidavit of probable cause, which he attached to his complaint. See Fed. R. Civ. P. 10(c); Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) ("[F]actual allegations . . . are taken from plaintiffs' complaint, including its attachments.").

In 2016, Officer Chris Monico, working undercover, purchased a total of approximately 150 grams of cocaine over the course of 13 controlled purchases from a man named James Brown (Brown). The purchases were part of an investigation that focused on several individuals including Brown; Allen's brother, Lance Allen (Lance); and a man named Roaul Brown (Roaul), unrelated to Brown. Most of the purchases followed a pattern: Officer Monico met with Brown, Brown left for a separate nearby location such as a house or car, and Brown returned with cocaine for Officer Monico.

Nine of the controlled buys occurred near Lance's residence. For example, on April 7, 2016, after Brown informed Officer Monico that he needed to "pick up" the cocaine from "his guy," Brown entered Lance's home, exited after a short while, and

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

handed cocaine to Officer Monico. Officer Monico previously had provided Brown with $200. During this transaction, Officer Monico saw a black SUV parked outside Lance's home.

The black SUV was often present at the controlled buys. For example, on June 30, 2016, Officer Monico had arranged to purchase more cocaine from Brown. Officer Monico arrived at Brown's residence, Brown got into Officer Monico's car, and then he and Officer Monico drove to a bar and grill. In the bar's parking lot, Brown exited Officer Monico's car and entered the rear seat of the same black SUV. Officers saw Lance in the driver's seat. Brown then returned to Officer Monico's vehicle and handed him 7.8 grams of cocaine.

In addition to their observations during controlled buys, officers learned from Mirandized interviews and purportedly trusted and reliable confidential informants that Lance trafficked cocaine, used his home as a storage location, and stored drugs at other locations around Lincoln. Officers also placed an electronic tracking device on the black SUV pursuant to a warrant. Although the black SUV was registered to Roaul, it was Lance who was usually seen driving it. The tracking device showed that the black SUV frequented the locations believed to be drug storage sites near in time to the transactions.

Allen himself came to Officer Monico's attention due to his presence at several locations during the investigation. The first encounter with Allen happened on April 13, 2016. On that date, Brown and Officer Monico drove to a restaurant in separate cars for Officer Monico to purchase cocaine from Brown. After parking near the restaurant, Brown made contact with a third vehicle parked nearby, a white SUV. Brown returned from the white SUV and handed Officer Monico 3.8 grams of cocaine. An investigator watched the events from across a highway.

After the controlled buy, an investigator trailed the white SUV before calling a patrol car. The patrol car initiated a traffic stop of the white SUV and discovered Allen was the driver. Allen asserted that he was from Colorado and was visiting and staying with his brother Lance. The white SUV was a rented vehicle with Oklahoma plates. Allen had a prior conviction for delivering drugs.

The second encounter with Allen occurred on June 20. On that day, investigators saw a car with Colorado plates parked at Lance's home. The investigator, who was familiar with Allen from a prior booking photo, saw Allen enter the home carrying an unknown package. The car was registered to Allen.

The third encounter with Allen occurred on June 30. On that day, prior to the controlled purchase described above, officers saw Allen's car at Brown's residence. Officers saw Allen enter the residence before Allen and Brown left together and Brown got into Officer Monico's car.

The fourth encounter with Allen occurred on August 6, 2016, when a SWAT team arrived at one of the suspected drug storage locations—Roaul's residence—to execute a search warrant. Just prior to execution of the warrant, officers saw Roaul drive away with Allen and Lance as passengers. Officers followed them, stopped their vehicle in a convenience store parking lot, and arrested Allen based on his suspected participation in the April 13 controlled purchase. Officers found $1,827 on Allen after his arrest.

Officer Monico then executed the affidavit of probable cause at issue in this case, resulting in a court finding the officers had probable cause to arrest Allen. In the affidavit, Officer Monico described the April 13 transaction:

> At 1655 hours, Brown made contact with a white 2016 Mitsubishi Outlander SUV displaying Oklahoma license plates 617 MHG, which

was parked in front of the businesses at 2712 Cornhusker Highway. Investigators on the surveillance detail could see the occupant of the Mitsubishi Outlander was a black male. At 1658 hours, Brown returned to my unmarked narcotics unit vehicle and provided me with a baggie containing 3.8 grams of powder cocaine.

In his complaint, Allen argues this statement was intentionally false to buttress suspicion against him. He asserts specifically that: (1) he was in a nearby business at the time Brown approached the white SUV and did not return to the white SUV until after the controlled buy; (2) no one was in the SUV when Brown approached it; (3) Officer Kossow was the lone surveillance investigator observing the white SUV such that use of the plural word "investigators" was false; and (4) in any event, Officer Kossow's location across a highway would have precluded his observation of the skin color of any person in the white SUV. The district court rejected Allen's arguments, finding that unchallenged portions of the affidavit demonstrated arguable probable cause.

On appeal, Allen renews his arguments as to the affidavit's alleged falsity. He also argues the district court erred by failing in several respects to construe the affidavit and the complaint in the light favorable to his claims.

II.

We review the grant of the motion to dismiss de novo. See Quinn, 470 F.3d at 1244.

"Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Ulrich v. Pope County, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011)). In general, "officers are entitled to qualified

immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." Copeland v. Locke, 613 F.3d 875, 880 (8th Cir. 2010) (citation omitted). As such, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman, 646 F.3d at 522–23 (quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)).

If a plaintiff alleges an affidavit contains false statements, we ask whether probable cause would still exist based on the undisputed facts. See Stockley v. Joyce, 963 F.3d 809, 820–21 (8th Cir. 2020) (examining an affidavit for probable cause and asking whether "probable cause would have been found if the misrepresentation had been corrected and the omissions had been included"). Alleged false statements notwithstanding, qualified immunity remains appropriate "if all the false and reckless portions of a warrant affidavit are corrected and the corrected affidavit still supports a finding of probable cause." Small v. McCrystal, 708 F.3d 997, 1007–08 (8th Cir. 2013) (citation omitted).

Allen treats the majority of the affidavit as uncontested, characterizing as false the limited passage quoted above. For this appeal, we assume Officer Monico falsely or recklessly used the plural term "investigators" and falsely claimed law enforcement witnessed a Black man in the white SUV while it was parked.

Regarding the remaining portions of the affidavit, Allen argues the district court erred in three respects. First, he argues the district court erroneously relied upon the discovery of cash on Allen after his arrest as evidence tending to support probable cause prior to his arrest. Second, he argues the district court erroneously characterized Allen as having been with James Brown rather than Roaul Brown when leaving the drug storage house immediately prior to his August 6 arrest. And third, he argues the district court failed to construe the complaint in his favor because it

concluded that the undisputed facts showed that Brown obtained cocaine from the white SUV during the April 13 transaction even though the affidavit merely states Brown "made contact" with the white SUV.

Allen is right that we must conduct our de novo probable cause review without reference to the cash discovered post-arrest and with correct identification of Allen's companions as Roaul and Lance at the time of his August 6 arrest. See Maryland v. Pringle, 540 U.S. 366, 371 (2003) ("[W]e examine the events leading up to the arrest."). And, regarding Brown's interaction with the white SUV on April 13, Allen is correct that the affidavit does not expressly state Brown obtained the cocaine from the SUV. But, our analysis still requires that we employ common sense when determining how a reasonable person would assess those facts. United States v. Abadia, 949 F.2d 956, 959 (8th Cir. 1991).

Taken in this light, uncontested portions of the affidavit show officers knew on August 6 that Allen repeatedly had been with the targets of their investigation close in time to cocaine sales. He was present at an adjacent business during the April 13 transaction and was stopped while driving the white SUV with Oklahoma plates shortly after that transaction—the vehicle Brown had just "made contact" with during the controlled purchase. He was present at his brother's home on June 20 in his own Colorado-registered vehicle and was seen carrying a package into the home. He entered Brown's residence on June 30 shortly before he and Brown left for Brown to travel with Officer Monico to a controlled purchase. And finally, he departed the suspected drug storage house on August 6 with his brother and Roaul just prior to the execution of the search warrant there. A reasonable person would view these facts against the general backdrop of Allen's prior drug trafficking conviction and Brown's modus operandi of meeting with Officer Monico, splitting off to a retrieval spot, and returning with cocaine.

Many of these facts, viewed in isolation, reasonably could be viewed as innocent, non-criminal association with others who were committing crimes. Viewed in totality through the lens of common sense, however, the affidavit with the alleged falsehoods removed still supports probable cause. District of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018) (emphasizing the totality of the circumstances and noting that "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts"). The district court properly found the officers entitled to qualified immunity as to Allen's Fourth Amendment claim.

III.

Allen presents additional claims, and the parties dispute the exact contours of those claims. Regardless, all such claims are derivative of the probable cause argument. Because we conclude Allen's primary claim fails, we affirm the judgment of the district court dismissing all of Allen's claims.

_____