# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1207
_____

Eric Wayne Poemoceah

*Plaintiff - Appellant*

v.

Morton County, North Dakota; Kyle Kirchmeier, in his individual capacity; Paul
Laney, in his individual capacity

*Defendants - Appellees*

Thomas Iverson, in his individual capacity

*Defendant*

Benjamin V. Swenson, in his individual capacity; John Does, 1 - 4

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: January 10, 2024
Filed: September 25, 2024
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Eric Poemoceah joined members of the Oceti Šakowiŋ[1] at the Standing Rock Reservation in North Dakota to protest the construction of the Dakota Access Pipeline. Morton County Police officers arrested Poemoceah for obstruction of a government function, but the charge was later dismissed. Poemoceah sued Morton County and various North Dakota law enforcement officers raising a variety of claims. The district court granted defendants' motions to dismiss and dismissed the complaint with prejudice. Poemoceah appeals.

I.

The following facts are taken from the complaint.[2] Poemoceah is an Oklahoma resident and a member of the Comanche Nation. On February 22, 2017, he was "present as a Water Protector" supporting the "peaceful opposition to the construction of the Dakota Access Pipeline." At about 4:20 p.m., Poemoceah was "unarmed, facing a group of about thirty law enforcement officers clad in riot gear, with about fifteen feet between him and the group of officers." Poemoceah spoke to the officers, "calmly, firmly, but not in a loud voice . . . in hopes of negotiating a peaceful process for . . . elders to leave the Water Protector encampment, which had been in place for several months." Poemoceah "advanced slightly (a couple of feet) while speaking," but "he remained at a respectful distance and did not make any sudden movements." He said:

> I know you have a job to do and a family to provide for, but why do it
> with protecting oil? That's all we're trying to do sir, is protect—protect
> the water. I know—I know you're looking at me and I know you just
> shook your head yes because you have a heart. You have a soul. And I

---

[1]The Oceti Šakowiŋ are also known as the Seven Council Fires or the Great Sioux Nation.

[2]The district court "considered only the facts on the face of Poemoceah's Complaint," and so do we.

know—you look like a very prayerful man. Why don't—why don't you be honorable and set down your badge in front of 6,100 people.

When he stopped speaking, "dozens of riot-gear-clad officers" "charge[d] towards him and the two other Water Protectors who were standing near him." Poemoceah "instinctively began running." He was not told he was under arrest nor was he told to stop.

One of the officers was Benjamin Swenson, a Bismarck police officer deputized by the Morton County Sheriff's office. Swenson "quickly reached [Poemoceah] and violently tackled [him] from behind." Swenson "thr[ew] his full weight on top of [Poemoceah, who was knocked] off the roadway onto the adjacent hill." Once tackled, Poemoceah "did not resist nor, through any words or actions, indicate any unwillingness to comply with" Swenson. Other officers, including Paul Laney, then-Sheriff of Cass County, North Dakota, and four who are identified as Defendant Does, "assist[ed]" Swenson. Poemoceah alleges that "two of them pil[ed] on top of [him]," "one or more of the[m] further assaulted [him] with a fist and/or knee after [he] was already subdued," and one "injured [Poemoceah's] left foot and ankle."

Poemoceah "cried out in pain," said he "can't walk," and told the officers that he thought his hip was broken. He asked for an ambulance. The officers mocked him, accused him of "playing games," and forced him to walk "at least two hundred feet" to the police van. Officers transported him to the main camp, where an ambulance took him to a local hospital. Roughly two and a half hours later, Poemoceah arrived at the hospital where medical providers determined he had "minor contusions" but failed to diagnose Poemoceah's "nondisplaced pelvic fracture." Poemoceah was then taken to the local detention center, where he was released on bond later that night. Poemoceah was charged with physical obstruction

of a government function, a class A misdemeanor in North Dakota. <u>See</u> N.D. Cent. Code § 12.1-08-01.[3] The charge was later dismissed.

Poemoceah alleges he "suffered a pelvic fracture . . . injuries to his neck, ankle, and left wrist," as well as "severe post-traumatic stress disorder, anxiety, and major depressive disorder related to the incident." He requires ongoing physical therapy and will continue to suffer the "debilitating effects of his pelvis injury for the rest of his life."

## II.

Poemoceah brought suit pursuant to 18 U.S.C. § 1983. He alleged that his First, Fourth, and Fourteenth Amendment rights were violated by five named Defendants—Morton County; Swenson; Laney; Kyle Kirchmeier, Sheriff of Morton County; and Thomas Iverson, a North Dakota Highway Patrol trooper—and four Does. Poemoceah also raised claims under North Dakota law.[4] The defendants moved to dismiss the complaint. The district court granted their motions, concluding the defendants were entitled to qualified immunity on the First and Fourth Amendment claims, and dismissing the remaining claims as inadequately pled. The court denied Poemoceah's request for leave to amend and dismissed Poemoceah's complaint with prejudice.

---

[3]The state court judge dismissed the charges *sua sponte* based on the state's failure to comply with the requirements of N. Dakota R. Crim. P. 3(a). The same charges against eight others who were arrested at the same time were also dismissed.

[4]Poemoceah originally brought assault and battery claims against Swenson and a claim for intentional infliction of emotional distress against all individual Defendants. He voluntarily dismissed the former, so only the latter claim remains.

III.

"We review the grant of the motion to dismiss de novo." Allen v. Monico, 27 F.4th 1372, 1376 (8th Cir. 2022). "[W]e read the complaint in the light most favorable to the plaintiff, making all reasonable inferences of fact in the plaintiff's favor." Id. at 1374. "Liability for damages for a federal constitutional tort is personal, so each defendant's [own] conduct must be independently assessed." Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006). "To decide whether an official is entitled to qualified immunity, we conduct a two-step inquiry," determining "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional or statutory deprivation; and (2) whether the right was clearly established at the time." Nieters v. Holtan, 83 F.4th 1099, 1105 (8th Cir. 2023) (quoting Webster v. Westlake, 41 F.4th 1004, 1009–10 (8th Cir. 2022)).

A.

Poemoceah first argues that his Fourth Amendment excessive force claim was improperly dismissed, addressing the conduct of Swenson only.[5] An officer's use of force violates the Fourth Amendment if it is "objectively unreasonable." Tatum v. Robinson, 858 F.3d 544, 547 (8th Cir. 2017) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Reasonableness depends on the circumstances surrounding the use of force, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting same). The Fourth Amendment analysis is one of "objective reasonableness," not subjective conjecture. Jackson v. Stair, 944 F.3d 704, 710 (8th Cir. 2019).

---

[5]To the extent Poemoceah intended to appeal the dismissal of excessive force claims against other defendants, any such argument is waived. See Mitchell v. Kirchmeier, 28 F.4th 888, 894 (8th Cir. 2022).

The district court found that when Poemoceah "advanced *toward* the officers," a reasonable officer could feel threatened. See Tatum, 858 F.3d at 547. But Poemoceah alleged that he was unarmed and peacefully attempting to negotiate the safe passage of elders from the site of the protest when he "advanced slightly (a couple of feet)." He also "remained at a respectful distance and did not make any sudden movements." Based on these allegations, we have difficulty concluding that it was objectively reasonable for an officer to believe that Poemoceah posed a threat.

According to the complaint, Poemoceah also was not resisting arrest or attempting to evade arrest when he "instinctively" ran from the officers. He was not under arrest, and he had been given no command to stay in place or to stop. Cf. Kelsay v. Ernst, 933 F.3d 975, 980 (8th Cir. 2019) (en banc) (reversing the denial of qualified immunity where the plaintiff was "a suspect who ignored an officer's command and walked away"); see also Jackson, 944 F.3d 704, 712 ("Unlike the plaintiff in Kelsay . . . Jackson did not ignore law enforcement commands; in fact, no commands were given."). The complaint describes no circumstances that prevented the officers from issuing such an order.

Viewing the factual allegations as a whole and drawing all inferences in his favor, Poemoceah plausibly alleges a Fourth Amendment excessive force claim against Swenson. And Poemoceah's right to be free from excessive force was clearly established in 2017. See Mitchell, 28 F.4th at 898 (collecting cases; explaining we have applied the Graham factors and "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against him"; and concluding this particularized right was clearly established in, and before, 2016).

B.

Next, Poemoceah argues that the district court erred when it dismissed his claim for deliberate indifference to a serious medical need. We analyze Poemoceah's

claim under the Fourteenth Amendment, since "the alleged violation occurred after [he] was arrested" and before any jail or prison sentence. Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (applying Fourteenth Amendment to arrestee's deliberate indifference claim that invoked due process only). To establish this claim, "[Poemoceah] must demonstrate that he suffered an objectively serious medical need, and that the [officers] had actual knowledge of those needs but deliberately disregarded them." Id.

Drawing all reasonable inferences in his favor, Poemoceah has failed to allege facts to show that the arresting officers had actual knowledge of his injuries. Bailey v. Feltmann, 810 F.3d 589, 594 (8th Cir. 2016) (explaining that objective component may be established by demonstrating the need was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention"). Poemoceah was in pain, but he was able to walk 200 feet to the police van. The officers then drove him to the base camp, where he was taken by ambulance to the local hospital. Poemoceah told officers he thought his hip was broken, but according to the complaint, the medical providers released him without "discover[ing] the nondisplaced pelvic fracture." Poemoceah alleges no other facts that would make the extent of his injury obvious to the officers. See Carpenter, 686 F.3d at 650 ("A showing of negligence is not sufficient to meet th[e] burden [of proving deliberate indifference].") We affirm the dismissal of his deliberate indifference claim.

C.

Next, Poemoceah argues that the district court erred by dismissing his First Amendment retaliation claim. To establish a violation of the First Amendment based on the retaliatory use of force, a plaintiff must show that (1) they "engaged in protected activity," (2) the officer "took adverse action against him that would chill a person of ordinary firmness from continuing the protected activity," and (3) that action "was motivated at least in part by the exercise of the protected activity." Peterson v. Kopp, 754 F.3d 594, 602 (2014) (quoting Revels v. Vincenz, 382 F.3d

870, 876 (8th Cir. 2004)). Poemoceah describes the retaliatory acts, or "adverse action," as excessive use of force and deliberate indifference to his injuries.

Poemoceah alleges he was engaged in protected activity, but he does not plausibly allege a causal connection between that activity and the officers' actions. See Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010) ("To prevail in an action for First Amendment retaliation, plaintiff must show a causal connection between a defendant's retaliatory animus and plaintiff's subsequent injury." (quotation omitted)). According to the complaint, after he spoke, Poemoceah was "startled to see" the officers "charge towards him and two other Water Protectors." There is nothing in the complaint to indicate that the "two other[s]" were also speaking. See De Mian v. City of St. Louis, Missouri, 86 F.4th 1179, 1182 (8th Cir. 2023) (explaining that to state a retaliation claim, "a plaintiff must demonstrate that she was 'singled out' due to her protected expression"). Additionally, Poemoceah alleges that the officers "charge[d] towards him" at some point after his speech, but without more, this does not plausibly connect the speech to the officers' alleged excessive force and deliberate indifference. See Graham v. Barnette, 5 F.4th 872, 889 (8th Cir. 2021) (noting that the temporal proximity of a plaintiff's protected activity and the defendant's act is relevant, but "not enough on its own" to establish retaliatory motive).

At this stage of the proceedings, Poemoceah is entitled to have all reasonable inferences drawn in his favor. But we cannot infer a motive for the officers' actions that lacks factual support in the complaint. DeCastro v. Hot Springs Neurology Clinic, P.A., 107 F.4th 813, 816 (8th Cir. 2024) ("'[F]actual' matter" in a complaint "does not include 'labels . . . or a formulaic recitation of the elements of a cause of action,' 'naked assertions[s] of claims,' or legal conclusions 'couched as' facts." (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). As alleged, Poemoceah's First Amendment retaliation claim was properly dismissed.

D.

We next address the dismissal of the supervisory liability claims. "While the doctrine of *respondeat superior* does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue." Elder v. Gillespie, 54 F.4th 1055, 1065 (8th Cir. 2022) (quoting Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014)). We agree with the district court that the complaint "does not implicate Iverson or Kirchmeier as any of the officers who were directly involved in Poemoceah's arrest or the force used against him" and that it fails to allege a failure to supervise or train beyond the fact that the two men were present at the scene. The supervisory liability claims brought against Iverson and Kirchmeier were properly dismissed.

Because the complaint alleges that Laney assisted Swenson, we consider this claim separately. It too fails. The complaint includes factual allegations concerning Laney's personal involvement in the use of force, but it alleges a theory of supervisory liability predicated only on Laney's (and Iverson's and Kirchmeier's) broader training and supervision. As against Iverson and Kirchmeier, this theory of liability is unsupported by the complaint's factual allegations. Poemoceah's supervisory liability claim against Laney was properly dismissed. See Richardson v. Omaha Sch. Dist., 957 F.3d 869, 877 (8th Cir. 2020) (at summary judgment, refusing to credit alternative theories of liability that were encompassed in complaint where "[t]he only hint of these theories is passing statements that were not pleaded as the factual basis for the legal claim"); Adams v. Am. Family Mut. Ins., 813 F.3d 1151, 1154 (8th Cir. 2016) ("A theory of liability that is not alleged or even suggested in the complaint would not put a defendant on fair notice and should be dismissed.").

E.

Next, Poemoceah challenges the dismissal of his Monell claim. Local governmental entities are "persons" that may be held liable under 28 U.S.C. § 1983.

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92, 694 (1978). A municipality may only be liable for a constitutional violation resulting from (1) an "official municipal policy," (2) an "unofficial custom," or (3) "failure to train or supervise." Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations omitted).

Poemoceah alleges that Laney and Kirchmeier, officials with "final policymaking authority," ratified a custom condoning officers' use of excessive force against the protestors. To establish an unofficial custom Poemoceah must show

> (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct"; and (3) an "injury by acts pursuant to the governmental entity's custom."

Mitchell 28 F.4th at 899–900 (quoting Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998)).

But Poemoceah does not allege facts establishing a pattern of conduct. Outside of his own experience, he does not point to specific instances where protestors were subject to excessive force by officers under Laney's and Kirchmeier's supervision. Poemoceah also alleged that multiple defendants failed to properly train their officers on policing norms in the context of the pipeline demonstrations,[6] but this too is inadequately pled. A failure to train is actionable under § 1983 if, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton

---

[6]Poemoceah also argues that law enforcement leaders failed to train officers on the use of explosives and less-lethal munitions, but nowhere in the complaint does he allege that "explosives and less-lethal munitions" were used.

v. Harris, 489 U.S. 378, 390 (1989). Poemoceah makes only conclusory allegations without asserting sufficient facts to support a claim that the need for training was so obvious that any of the individual defendants were deliberately indifferent to it. Because Poemoceah has failed to allege an unconstitutional policy, practice, or custom, the Monell claim against Morton County fails as well.

F.

Poemoceah challenges the dismissal of his only claim under North Dakota law, brought against all individual defendants, for intentional infliction of emotional distress (IIED). North Dakota adopts the definition of IIED stated in Section 46 of the Restatement (Second) of Torts: "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." Swenson v. N. Crop Ins., Inc., 498 N.W.2d 174, 181 (N.D. 1993) (quoting Muchow v. Lindblad, 435 N.W.2d 918, 924 (N.D. 1989)). "Whether the threshold of extreme and outrageous conduct has been met is a question of law for the court to decide." Botteicher v. Becker, 910 N.W.2d 861, 866 (N.D. 2018). But "[w]here reasonable [people] may [disagree], it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous." Swenson, 498 N.W.2d at 182 (first alteration original) (citation omitted).

The Supreme Court of North Dakota has explained that it "has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." Zuger v. State, 673 N.W.2d 615, 622 (N.D. 2004) (quoting Muchow, 435 N.W.2d at 924). Rather, "[t]he 'extreme and outrageous' threshold is narrowly limited to conduct that exceeds 'all possible bounds of decency.'" Id. The standard is "strenuously high." Hysjulien v. Hill Top Home of Comfort, Inc., 827 N.W.2d 533, 549 (N.D. 2013).

Poemoceah alleges the Defendants engaged in extreme and outrageous conduct by "assaulting [him], then berating him, and then forcing him to walk more

-11-

than 200 feet with a broken pelvis." As a "direct and foreseeable consequence" of these actions, Poemoceah alleges he "suffered severe emotional distress and mental anguish," including "severe post-traumatic stress disorder, anxiety, and major depressive disorder."

We agree with the district court that the allegations are insufficiently extreme and outrageous. As to the alleged assault, we note that this tort is intended to address the intentional infliction of emotional—not simply physical—distress. See Restatement (Second) of Torts § 46 cmt. i (1965) (noting the tort "applies where the actor desires to inflict severe *emotional* distress" (emphasis added)); Restatement (Second) of Torts § 47 cmt. a (noting that § 46 "creates liability only where the actor intends to invade the interest in freedom from severe emotional distress," and that "[t]he fact that the actor intends to invade some other legally protected interest is insufficient to create liability . . .").[7] And as to the officers' alleged taunts, though "perhaps insensitive or inconsiderate or even oppressive," Botteicher, 910 N.W.2d at 866, they are not "so outrageous in character, and so extreme in degree, as . . . to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") Finally, like his deliberate indifference claim, the allegations fail to show the officers knew the extent of Poemoceah's physical injuries and thus do not plausibly suggest harmful intent.

---

[7]Because North Dakota "recognize[s] a tort cause of action for intentional infliction of emotional distress under Restatement (Second) of Torts § 46 (1965)," Hougum v. Valley Mem'l Homes, 574 N.W.2d 812, 819 (N.D. 1998), we draw on the Second Restatement in addition to North Dakota Supreme Court caselaw in charting the tort's contours. See Washburn v. Soper, 319 F.3d 338, 342 (8th Cir. 2003) (pointing to state court's "commitment to the [Second] Restatement" as a "clear and persuasive indication" that its approach to novel issue would echo the Restatement).

Even considering the alleged actions in combination, the claim fails. Poemoceah brought this claim against "the individual Defendants" as a group. Unlike other claims in the complaint, Poemoceah makes no effort to tie any (or all) of the alleged conduct to any particular defendant. As a result, we are prevented from "draw[ing] the reasonable inference that [any one] defendant is liable for the misconduct alleged." Ash v. Anderson Merchandisers, LLC, 799 F.3d 957, 960 (8th Cir. 2015) (quoting Iqbal, 556 U.S. at 678). Poemoceah's claim for intentional infliction of emotional distress under North Dakota law was properly dismissed.

IV.

Finally, Poemoceah argues that the district court abused its discretion by denying his motion to amend his complaint. Midwest Med. Solutions, LLC v. Exactech U.S., Inc., 95 F.4th 604, 606 (8th Cir. 2024) (standard of review). Poemoceah did not file a motion for leave to amend his complaint, instead addressing the issue cursorily in his opposition to the Motions to Dismiss. Nor did he provide the district court with a copy of a proposed amended complaint or indicate what meaningful amendments it would have contained. Pet Quarters Inc. v. Depository Tr. & Clearing Corp., 559 F.3d 772, 792 (8th Cir. 2009). Therefore, beyond "the claims that the district court should not have dismissed at all . . . [it] did not abuse its discretion in dismissing the complaint with prejudice." Mitchell, 28 F.4th at 903; see also Soueidan v. St. Louis Univ., 926 F.3d 1029, 1036–37 (8th Cir. 2019).

V.

We affirm in part, reverse in part, and remand for further proceedings on Poemoceah's Fourth Amendment claim against defendant Swenson.

_____